```
1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
2                         MARSHALL DIVISION

3    SPORTSCASTR, INC.,            (  CAUSE NO. 2:23-CV-472-JRG
                                   )
4            Plaintiff,            (
                                   )
5    vs.                           (
                                   )
6    SPORTRADER, INC., et al.,     (  MARSHALL, TEXAS
                                   )  SEPTEMBER 30, 2024
7            Defendants.           )  10:30 A.M.
     _____
8

9

10   _____

11                   TELEPHONIC MOTION HEARING

12

                  BEFORE THE HONORABLE RODNEY GILSTRAP
13                UNITED STATES CHIEF DISTRICT JUDGE

14   _____

15

16

17

18

19

20

21

22                   SHAWN McROBERTS, RMR, CRR
                        100 E. HOUSTON STREET
23                   MARSHALL, TEXAS  75670
                          (903) 923-8546
24               shawn_mcroberts@txed.uscourts.gov

25
```

1                     A P P E A R A N C E S

2          FOR THE PLAINTIFFS:    KING & SPALDING, LLP
                                  500 W. 2ND STREET, SUITE 1800
3                                 AUSTIN, TEXAS  78701
                                  (512) 457-2000
4                                 BY: MR. MATTHEW WOOD

5                                 CHERRY JOHNSON SIEGMUND
                                  JAMES, PLLC
6                                 400 AUSTIN AVE., 9TH FLOOR
                                  WACO, TEXAS  76701
7                                 (254) 732-2242
                                  BY:  MR. WILL ELLERMAN

8
           FOR THE DEFENDANTS:    BRYAN CAVE LEIGHTON
9                                 PAISNER, LLP - ST. LOUIS
                                  ONE METROPOLITAN SQUARE
10                                211 NORTH BROADWAY, SUITE 3600
                                  ST LOUIS, MISSOURI  63102-2750
11                                (314) 259-2000
                                  BY:  MR. DAVID ROODMAN
12                                     MR. NICK WILLIAMSON

13                                SCHEEF & STONE, LLP - MARSHALL
                                  P.O. Box 1556
14                                MARSHALL, TEXAS  75671-1556
                                  (903) 938-8900
15                                BY:  MR. MICHAEL SMITH

16         OFFICIAL REPORTER:     SHAWN M. McROBERTS, RMR, CRR
                                  100 E. HOUSTON STREET
17                                MARSHALL, TEXAS  75670
                                  (903) 923-8546

18

19

20

21

22

23

24

25

10:46

                THE COURT:  Good morning, counsel.  This is Judge
Gilstrap.  This is a telephonic hearing in the SportsCastr
d/b/a Panda Interactive versus Sportrader Group, et al.,
matter.  This is Case No. 2:23-CV-472.

        Let me ask for announcements on the record beginning with
the Plaintiff.  One at a time, please.  Please tell me who's
on the call on behalf of the Plaintiff Panda.

10:47

                MR. ELLERMAN:  Yes.  Good morning, Your Honor.  This
is Will Ellerman with Cherry Johnson Siegmund James.  Also on
the call is Matthew Wood from King and Spalding.  And Mr. Wood
will be arguing.

                THE COURT:  All right.  Who's on the call on behalf
of Defendant Sportrader?

                MR. SMITH:  Your Honor, Michael Smith.  And with me
on the call is Mr. Dave Roodman and Mr. Nick Williamson.  And

10:48

Mr. Roodman will be presenting for us, and we're ready to
proceed.

                THE COURT:  All right.  Well, I think I understand
the background of the issues, so why don't we just jump in.

        Mr. Wood, let me hear from you, please.

                MR. WOOD:  Appreciate you accommodating us for the
hearing given the unique circumstances of this motion.  It's a
little unusual.  We thought the Court might benefit from being
able to hear from the parties.

10:49

        As we set forth in our motion, we think the issue is

1    relatively straightforward.  We attempted to serve our

2    amended -- or our initial infringement contentions on

3    Sportrader on March 11th in accordance with the docket control

4    order.  We believed that service had been successful.  We

5    loaded the infringement contentions into a box account at an

6    FTT site, and intended to give Sportrader's counsel access to

7    that site.

10:49    8        As I believe you're aware, Your Honor, there is a

9    co-pending case against Genius Sports that was filed at the

10    same time, and our administrative personnel who were in charge

11    of -- who were assisting us in affecting the service got the

12    counsel representing the two parties mixed up by mistake.

13    When Genius emailed the following day saying they had received

10:50    14    the service email on accident, they emailed our administrative

15    personnel who confirmed that it was an error and, as you can

16    see in the email that is attached to Sportrader's opposition

17    at page 4, Ms. Newman, our administrative personnel who was

18    performing the service, stated her belief on March 12th, the

19    day after the service, telling Genius that she believed,

10:50    20    quote, "your team was not given access to the materials in the

21    box account."  She believed that, simply, one of the service

22    emails had been sent by mistake to Genius, but that the actual

23    contentions had been successfully served on Sportrader.

24        As you can see, in our motion, and it's a little small,

25    our motion at page 3 and then I think it's Exhibit 2 to our

10:50

1    motion, it's a little small but I can represent to you that

2    Vicki Meredith, the paralegal representing Genius at Kirkland,

3    and there Mr. Lomeo at Kirkland were two of the individuals

4    who were given access to the box account and Sportrader,

5    unfortunately, wasn't.

6    But even after Genius emailed us, we were not aware of

7    the extent of the error.  We never received any similar email

8    from Sportrader.  There were footnotes placed in unrelated

10:51

9    large filings that went unnoticed.  We were focused on the

10   substance of those filings, and it wasn't until we had a meet

11   and confer in July that the issue actually was raised to our

12   attention.

13   We sent an email on July 8th complaining about

14   Sportrader's technical document production.  In that email we

15   cited to pages in our infringement contentions that we believe

16   were calling out functionality that we weren't seeing

10:51

17   documents for.  On the meet and confer we had after that,

18   Sportrader said, We don't understand what these citations are.

19   If you look at this in a follow-up email explaining they

20   were our contentions.  On July 19th, which was a Friday,

21   Sportrader said for the first time in an email, We never

22   received separate infringement contentions.  That Monday, July

23   22nd, we sent and email back confirming that we had -- we

10:52

24   believed we had served them, we investigated that day,

25   realized a mistake, and fixed it that same day.

1    So we understand, obviously, the administrative error

2  was our own and we're not disputing that, but it was an honest

3  mistake.  It was an error that did go unnoticed until we --

4  until Sportrader raised it in an email, and we immediately

5  fixed it as soon as it was written in an email.  We think that

6  the -- despite the mistake, though, there is still plenty of

10:52  7  time left in discovery.  Fact discovery doesn't end until

8  March 17th.  There's still several months from the time that

9  they received the infringement contentions in July.  We don't

10  believe there is any prejudice here, that there's any need for

11  an extension, and we request the Court grant our motion to

12  serve the contentions out of time.

13    THE COURT:  All right.  Mr. Roodman, let me hear

10:53  14  your version of things, please.

15    MR. ROODMAN:  Thank you, Your Honor.  Good morning.

16    One thing I'd like to just address up front, Your Honor,

17  is in Plaintiff's papers they repeatedly alleged that

18  Defendants and Defendants' counsel have intentionally tried to

19  create this prejudice that this is a charade and that we've

10:53  20  known about the error, mistake that Mr. Wood just identified

21  since March.

22    And I want to put on the record -- we obviously put in

23  our papers, that that's just false.  But I'd like to put on

24  the record as an officer of the court, I'd be willing to swear

25  on a Bible, we were never aware of the mistake until July

10:54

1   22nd.  What occurred here is Plaintiff Panda served in

2   connection with their amended complaint, which Your Honor's

3   aware there was a complaint filed I believe -- original

4   complaint last October or so, and then this amended complaint

5   was filed in March.  And attached to that complaint were

6   approximately 600 pages of what were titled both "Plaintiff's

7   Preliminary Infringement Contentions" and Infringement

8   Contentions," which, when we reviewed it -- and this was

9   served, by the way, one business day before March 11th, and so

10  it was served on a Friday before the Monday.

10:55

11       And it wasn't titled "Infringement Contentions" under

12  3-1, but given the fact that there were 600 pages and they

13  were titled "Preliminary Infringement Contentions and

14  Contentions," that we believed that's what Panda intended to

15  serve on us.  And we indicated that in papers that we filed,

16  which I'll address in a moment.

17       But we discussed -- and I'm happy to share, probably more

10:55

18  than I should, but we discussed internally whether or not --

19  including with Michael Smith, whether, Hey, should we need to

20  strike this because in those contentions they didn't title it

21  as 3-1 and they didn't specifically identify -- the priority

22  claims didn't allege use of the alleged inventions.  But that

23  information was in the body of the amended complaint, and we

24  decided, Hey, we're not going to put form over substance, and

10:55

25  we didn't move to strike it, the contentions were there, and

1    we were unaware of any alleged mistake.

2        There were also other allegations that were made in the

3    papers that somehow we may have conspired with Genius and sat

4    on this, and that's just blatantly false, Your Honor.  We

5    reached out to Genius after we were advised around July 22nd

6    by Panda's counsel that they had made a mistake and said

10:56    7    -Genius -- and we reached out to Genius' counsel and said,

8    Hey, is this true, and they looked and found the email and

9    they shared it with us.  Of note is that fact was never shared

10    with us by Panda; we got that information from Genius.

11        So anyway, that addresses the issue, hopefully, that

12    there's been no conspiring, there's been no intentional

13    misconduct, or any misconduct at all on the part of the

14    Defendants.

15        The issue here, we believe, Your Honor, comes down to

10:56    16    diligence, which is the standard that Plaintiff Panda needs to

17    establish, we believe, to be able to amend its infringement

18    contentions.  There are, you know, approximately four

19    different points which we believe establish that there was no

20    diligence here and that Plaintiff has not met its burden.

21        First, it's characterized as a clerical mistake, and we

22    believe that, you know, maybe that's true, maybe a legal

23    assistant didn't serve it properly.  But the certificate of

10:57    24    service on the document itself, which was signed by counsel,

25    indicated that the document that was allegedly sent to us went

1  to Genius' counsel, so counsel was involved.  That's the first

2  step of they served the wrong party, but they should have

3  caught it with due diligence.

4      The second is one day later Genius reached out and said,

5  Hey, should we have received this, and Panda's counsel had

6  notice, and didn't just go to the legal assistant.  As we

7  indicated in our papers, it appears the top were talking in

10:57  8  those emails.  And maybe they didn't (unintelligible), but

9  they should have.  That's the second step in due diligence.

10     Third is we served our invalidity contentions, and we

11  didn't vary any statements with respect to the fact that we

12  were relying upon the contentions that were served with the

13  amended complaint.  On page 2 of our cover memo--and yes, it's

10:58  14  in a footnote, but it's about a quarter of a page--we explain

15  the fact that we were relying on the infringement contentions

16  that they served because we didn't we receive a separate

17  document that was titled 3-1.

18     We didn't lay behind the log, we didn't hide anything; we

19  said this is what we're relying on because that's all we

20  received.  We didn't -- and we believed at that time that that

21  was Panda's intent.  We didn't move to strike it and relied on

22  it.  It was conspicuous.

23     Moreover, the fourth point, they should have caught it.

10:58  24  At any diligence they should have understood that.  And I

25  understand Mr. Wood comment, Well we didn't read the cover

1    memo in its entirety in connection with the invalidity

2    contentions, but fourth, the contentions that we filed were

3    addressed to the seven claims that were asserted.  It wasn't

4    124 claims; it was the seven specific claims they asserted in

5    the products that they asserted.  There is no reason why

6    Plaintiff and Plaintiff's counsel could not and should not

10:59   7    have diligently determined that we were relying upon the

8    contentions that they served on Defendants that were titled

9    "Preliminary Infringement Contentions and Contentions."

10    Going over, Your Honor, we've looked at your cases, of

11    course, in the past, the four factors that are of import here

12    that the Court typically considers is, one, an explanation for

13    failure to meet the deadline.  And as I've just laid out, we

14    don't believe there's a good explanation for failing to meet

15    that deadline.

10:59   16    The second is the factor's importance; what's the

17    importance of having to add -- and Plaintiff's not asking to

18    add one claim or two claims; they're asking to add 117 claims

19    to the seven original claims.  And to put it in context, we

20    prepared and served over 10,000 pages of invalidity

21    contentions for seven calculate.  And I can't calculate--maybe

22    I should pull out a calculator--but the enormity of what would

11:00   23    be required if 117 claims are added, but the key here is and

24    what I didn't hear from Mr. Woods is what's the importance of

25    the additional 117 claims?  It's not anywhere in their papers

1    other than, Hey, it would be unfair.

2        Plaintiff has failed to show any importance with respect

3    to adding the enormous number of claims they are now wishing

4    to add, other than the prejudice it's going to cause us, which

5    is the next factor that the Court looks at--the potential

6    prejudice if leave is not granted.

11:00    7        And we spent an exorbitant amount of time, money, and

8    resources preparing the invalidity contentions that have

9    already been served and prepared on the seven claims; again,

10   over 10,000 pages and charts.  And to add 117 claims at this

11   late date, six months later we believe is going be an

12   exponential undertaking.  And, Your Honor, we believe that's

13   prejudice.  Had we known that earlier, there's undoubtedly

11:01    14   going to be some duplication.  There's been no identification

15   of what the importance of these additional 117 claims are, and

16   we don't believe that the prejudice -- the prejudice far

17   outweighs the -- any benefit that we haven't even seen with

18   respect to adding this.

19            THE COURT:  All right.

20            MR. ROODMAN:  So, Your Honor, we believe the motion

21   should be denied.

22            THE COURT:  Mr. Wood, address the importance of

11:02    23   these 117 additional claims, and also speak to Defendant's

24   assertion of prejudice.  I mean, if each of the 117 are unique

25   and stand alone, then that certainly is a different situation

11:02

11:02

11:03

1    than if there are 117 claims that fit within, more or less,

2    for example, six discreet categories or buckets, and dealing

3    with those six is a whole lot different than dealing with 117

4    standalone unique contentions.

5        So tell me, number one, what the importance of these are;

6    and then, number two, address the possibility that they are,

7    in fact, unique and standalone, and so I need to consider them

8    as 117 separate areas of inquiry and work, or they're

9    categorized properly in a much smaller group and the assertion

10   that this would be 117 start to finish exercises is really not

11   the case.

12       Can you address those two things for me?

13       MR. WOOD:  Certainly, Your Honor.

14       And they tie together fairly well.  You know, first to

15   the point about buckets, I don't think it would even be six

16   buckets, Your Honor.  I think all of the -- as is the case of

17   most patents, these patents are all in the same family, the

18   claims all relate to the same invention.  And the dependent

19   claims, for example, that are being added, you know, the

20   independent claims, you know, might say you need to have this

21   type of component, and then you have a dependent claim that

22   says the component needs to be one of A, B, C, or D.

23       The independent claim might say, you know, there needs to

24   be a secure internet connection, and the dependent claim says

25   the internet connection need to be this type of protocol.

11:03

There're those types of claims.  None of the claims are claiming an entirely new, distinct invention that is not overlapping with the exemplary claims that we included in our Rule 11 charts that were attached to the complaint.

And I'll note as a short aside, counsel mentioned that we served our amended complaint the day before the infringement contentions were due.  The charts that were attached to that amended complaint were the same charts that we attached to our original complaint, that was filed, you know, almost a year ago at this point.  So I don't -- I'm not sure how you could look at those and think that those are up-to-date charts, but that's a bit of an aside.

THE COURT:  Talk to me about the importance --

MR. WOOD:  Sure.  The importance, despite the overlap in the claims, I think the primary importance I see is two primary factors, which we do discuss in our papers.

11:04

The first is we have system clams and method claims, and you have, as is often the case in a patent, an independent claim that is claiming a particular method and then a separate independent claim that is claiming a system that performs or is configured to perform that method.

And so the technical substantive evaluative investigation you have to do to determine whether there's infringement or invalidity of those claims is going to be essentially the same.  There's almost nothing additional you would need to do

11:05    1    for the system other than, you know, check and make sure

2    there's a server and a processor, whatever the physical

3    components of the system are, that that additional

4    investigation is essentially de minimis.

5         But there are considerable infringement issues, you know,

6    § 271 issues that come up when you're looking at infringement

7    of a system of a system versus infringement of a method.

8    There's divided infringement issues, there's extra

9    territoriality issues, there's inducement --

10              THE COURT:  Mr. Wood?

11              MR. WOOD:  --contributory infringement issues.

12         Yes, sir.

11:05   13              THE COURT:  Mr. Wood, slow down, please.  I want to

14    make sure the court reporter follows you, and it's always

15    challenging with a speakerphone.

16              MR. WOOD:  Understood.  Understood.  I apologize,

17    Your Honor.

18              THE COURT:  Go ahead.

19              MR. WOOD:  But that's the primary importance that we

20    see is having the system claims and the method claims both in

21    the case is important for us.  We don't know what Sportrader's

11:06   22    non-infringement positions are going to be with respect to

23    use, how the system is employed, the indirect infringement

24    arguments, and their -- those legal issues are different

25    between the system and the method claims.  So it would cut

1    out a pretty significant leg of our potential infringement

2    case to leave the remaining independent claims out of the

3    case.

4        And then, of course, with dependent claims you have

5    limitations that are being added that are relatively minor.

11:06    6    As I said, you know, a lot of times this component needs to

7    perform this particular way; that they're not adding anything

8    new or drastically different in terms of the type of technical

9    investigation that would be required to determine whether or

10    not infringement is met.

11        But again, you know, claim construction hasn't happened

12    yet.  We don't know the metes and bounds of Sportrader's

13    non-infringement or invalidity positions, and it could very

14    well be the case that a dependent claim with a particular

11:07    15    limitation is the difference between validity or invalidity in

16    terms of the asserted claims.

17        So we don't believe from a technical standpoint in terms

18    of the kind of investigation that's going to be required to

19    understand the scope of the claims and how we're claiming that

20    they map on to the accused products, that that is a terribly

21    large undertaking.  All of the claims are substantially

22    related to each other, and so we don't believe there's a

11:08    23    considerable technical investigation that's going to need to

24    occur to address these claims, but if -- it could very well be

25    the case that there are significant legal issues,

1    non-infringement, validity issues that could be arise as the

2    case proceeds to trial where these claims can end up becoming

3    very important.

4         THE COURT:  All right.  Thank you for that.

5      Do you have anything in response, Mr. Roodman?

6         MR. WOOD:  Can I --

7         THE COURT:  Yes.  Go ahead, Mr. Wood.

11:08    8         MR. WOOD:  I was going to point out as well, as

9    Mr. Roodman explained, you know, there are four factors the

10   Court looks at.  We obviously understand that diligence is

11   important.  We understand that we made an error here, but I

12   don't think there can be any real dispute that this was an

13   honest mistake.  This was not an intentional gambit or

14   gamesmanship to try to delay sending Sportrader their

15   infringement contentions.  I don't think there's any evidence

16   of that.

11:09   17      And in that case, we believe that the *Apple versus

18   Samsung* case that we cited in our briefs from the Northern

19   District of California is on point here, that the Court there

20   notes that courts have allowed amendments when the movant made

21   an honest mistake, the request to amend did not appear to be

22   motivated by gamesmanship, or where there is still ample time

23   left in discovery.  And we think all three of those points

24   have been met.  This was an honest mistake, there was not

11:09   25   gamesmanship or some sort of gambit on our part, and we

1    believe there is a ample time left in discovery to evaluate

2    the new claims and add them to the case without the need for

3    any extension.  We've still got six months or so left in

4    discovery between the time we served the infringement

5    contentions and the close of fact discovery.

6           THE COURT:  All right.  Anything else, Mr. Wood?

7           MR. WOOD:  I think that's it from me, Your Honor.

8           THE COURT:  Mr. Roodman, do you have any brief

9    follow-up?

11:09  10           MR. ROODMAN:  Thank you, Your Honor.  And I'll make

11    it brief, Your Honor.  And let me take these in the order I

12    wrote them down.

13       Mr. Wood's statement that's the charts are all the same,

14    respectfully, is inaccurate.  The charts that were filed with

15    the amended complaint included new charts for the newly

16    asserted I believe the '008 Patent.  Entirely new charts were

17    -- they were all titled "Preliminary Infringement

18    Contentions."  So they were not identical; they were

19    different.

11:10  20       With respect to the *Apple versus Samsung* case, you know,

21    the court actually said --

22           THE COURT:  Let me save you some time.  I am

23    familiar with the case, I know what the Guidelines are here,

24    and there's no need to go into that in detail.  I'm well aware

25    of that.

11:10

1    MR. ROODMAN:  Okay.  And so to the last point,
2    Judge, other than Mr. Wood pointing out that there are system
3    versus method claims, I didn't hear any specificity with
4    respect to what the importance here is.  I heard generalities,
5    but -- and then he said he doesn't think there's even six
6    buckets, but there's no identification of what buckets that
7    are coming, differences, how many claims are going to be
8    involved with respect to the complexity of what's going to be
9    involved.

10    Mr. Wood said that they're relatively minor dependent
11:11
11    claims.  To add 117 claims to the seven claims that Defendants
12    have relied upon based upon what Plaintiff Panda did is going
13    to require an exorbitant amount of work, and it's going to
14    create a significant amount of prejudice, and I don't believe
15    we've heard with any specificity what the importance here is,
16    other than there's a lot of claims and they're system and
17    method claims and they may be important but we don't know.
18    And we don't believe that there's enough, Your Honor,
11:12
19    certainly with respect to that factor, but all factors
20    combined that Your Honor's aware of with respect to diligence,
21    the failure to meet the deadline, importance, and prejudice,
22    we believe it's insufficient and the Plaintiff's motion should
23    be denied.

24    THE COURT:  All right.  Thank you.
25    All right, counsel.  With regard to this matter, first of

11:12    1    all, I don't put any credence in the back-and-forth

         2    allegations of impropriety or gamesmanship or lying behind the

         3    log either direction.  I think it's unfortunate that that's

         4    crept into the exchange between the parties here, but I don't

         5    give it any credence.

         6         With regard to Mr. Wood saying that the Plaintiff made an

         7    honest mistake, I don't know how honest it was; I don't think

         8    it was intentional, I don't think it was contrived.  It

11:12    9    clearly was a mistake.  And there were at least a couple of

        10    opportunities between March and July to catch the mistake.

        11    When the counsel for Genius called and said, Were we supposed

        12    to get this, that is an opportunity to catch it that was

        13    missed.  In August when Defendants served their invalidity

        14    contentions, I understand they weren't served in isolation and

11:13   15    there were thousands of pages of additional material, but this

        16    footnote is not buried; it is clearly on page 2 and, the best

        17    of my eyesight, it's the same font as the text of the

        18    commission is.  So -- and it says on its face that they have

        19    -- the infringement contentions haven't been properly served.

        20         So there not only was a mistake; there was a couple of

        21    opportunities to catch the mistake that were missed, too.

11:13   22    Again, I don't think they were intentional misses, but they

        23    were misses nonetheless.  So the diligence factor here is not

        24    strong.

        25         I do think -- notwithstanding Mr. Roodman's arguments,

11:14

I do think that there is importance here from the Plaintiff's
standpoint. And I don't know that the granularity he asked
for is necessary at this point, but I'm persuaded that these
are not frivolous amended contentions.

And with regard to the prejudice factor, if these had
been properly served in a timely fashion and the same 117
amended contentions had been properly served along with the
original seven contentions, Defendant would have to deal with
them.

11:14

Now, whether down the road there was a showing of
exceptional litigation, that's for another day, but at that
point Defendant would have had to deal with them. So to say
now from the Defendant's standpoint the cost and the expense
and the delay of dealing with those is something that we
shouldn't have to consider because we never would have had to
do it is just not the case. Defendant would have had to do it
if the Plaintiff had done their job right.

11:15

So -- and I don't -- I'm not persuaded that these are 117
unique, standalone inquiries that are going to require
separate and unique analysis on each one. I don't know that
they're properly categorized in as few as six categories or
buckets. I think -- Mr. Wood said he thinks they are. I
don't know that anybody's looked at that with great detail.
But I'm persuaded there is almost unavoidably a material
amount of overlap here.

| | | |
|---|---|---|
| 11:16 | 1 | So, long story short -- and nobody's talked about a |
| | 2 | continuance and I don't think a continuance is a relevant |
| | 3 | factor at this early stage. Given the stage of the case, |
| | 4 | given that we're talking about from March until July as the |
| | 5 | squandered, for lack of a better term, amount of time, I'm |
| | 6 | going to permit the amended contentions and the proper service |
| | 7 | of the original contentions. We're going to fix this and |
| 11:16 | 8 | we're going to fix it now. And Plaintiff needs to serve |
| | 9 | everything correctly immediately. |
| | 10 | I am going to award the Defendant the cost of opposing |
| | 11 | this motion, and I'm going to direct that the Plaintiff |
| | 12 | reimburse Defense counsel for the reasonable cost of this |
| | 13 | motion and the time it's taken to resolve this before the |
| | 14 | Court. Defendant's not supposed to get greedy and gouge here; |
| 11:16 | 15 | this is reasonable and attributable to this dispute. But |
| | 16 | Plaintiff's going to reimburse Defendant for that because |
| | 17 | Defendant shouldn't have had to do this; Plaintiff should have |
| | 18 | done it right to begin with. |
| | 19 | Also, I'm going to direct that the parties meet and |
| | 20 | confer on the issue of scheduling. I am not going to |
| | 21 | unilaterally enter an amended docket control order that pushes |
| 11:17 | 22 | these deadlines that are yet to be reached out, but if the |
| | 23 | Defendant thinks that the March to July time frame, be that |
| | 24 | four months or whatever it is, that's been squandered--and I |
| | 25 | think squandered is a good word here--if Defendant thinks that |

1    it would be appropriate to expand the deadlines in the current

2    docket control order to recapture that amount of time,

3    especially in light of what Defendant's fears are about these

11:17   4    amended contentions, the Court's inclined to amend the docket

5    control order even if I have to move the trial date a

6    reasonable amount.  And I think that mitigates, to a large

7    extent, of any prejudice Defendant otherwise feels that they

8    are going to suffer.

9        So to recap, the opposed motion for leave to properly

10   serve the initial infringement contentions and the amended

11:18   11   contentions by Plaintiff is going to be granted, but I'm going

12   to order Plaintiff to reimburse Defendant the cost of this

13   dispute related to the opposed motion that Plaintiff filed and

14   the hearing that's been had today.

15       And I'm going to expect both sides to meet and confer

16   reasonably about whether it is or isn't necessary to expand

17   the deadlines in the current docket control order.  And, quite

18   honestly, Plaintiff, if the Defendant feels strongly that it

11:18   19   is, I'm probably going to give Defendant some latitude here

20   whether you oppose it or not.  But I think both sides need to

21   communicate professionally and reasonably about that issue.

22       Perhaps four months is too much, perhaps a month or two

23   months would be adequate, but if Defendant feels it needs some

24   additional time to grapple with what's being served on it at

25   this delayed time, I'm going to be inclined to give them that

11:19    1    latitude.  But I want both sides to talk about it and

2    hopefully come back to me with either, We'll make the time

3    lines that we have work, or an agreed-upon motion to modify

4    the docket control order.  I'm not going to do it

5    unilaterally, but I want to hear from you-all after you've met

6    and conferred on that issue.  And given the stage of where we

7    are in the case--and yes, it is relatively early--I think this

11:19    8    is a fair result.

9          Plaintiff, I trust that just the lawyers on this side are

10    not the only ones that know about this, and the support staff

11    and the people that see all these exchanges back and forth who

12    also missed not only doing it right the first time but the

13    early signs that it needed to be corrected, I hope that there

14    are some corrective measures.

15          I mean, when the Kirkland and Ellis people call you and

11:20    16    say, Were we supposed to get that, it's hard for me to see how

17    that was overlooked unless it's just arrogance or you've got

18    staff that's stretched so thin that they don't do what they're

19    supposed to do.  But there clearly are some internal

20    corrective measures that King and Spalding need to look at.

21          And I'm not going to require anything here; I just -- I'm

22    going to make it clear that I think that's something you need

23    to go back to your firm and make sure this doesn't happen

11:20    24    again.  I haven't seen this kind of sloppiness from your firm.

25    I hope I don't see it again.  If I do see it again, it

```
 1    probably won't be treated in the same manner as this

 2    situation's being treated by the Court.

 3         So with all that, counsel, bottom line is I'm going to

 4    grant the opposed motion to amend from the Plaintiff, I'm

 5    going to direct the Defendant to be reimbursed for its costs

 6    in this matter, and I will wait to hear from you-all whether

 7    there's an agreed-upon or disputed need to consider modifying

 8    the docket control order in this case.  That will be the

 9    Court's order.

10         Thank you for your attendance.  That concludes today's

11    telephonic hearing.

12                        (End of hearing.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

11:21

1    I HEREBY CERTIFY THAT THE FOREGOING IS A

2    CORRECT TRANSCRIPT FROM THE RECORD OF

3    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4    I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

5    FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

6    COURT AND THE JUDICIAL CONFERENCE OF THE

7    UNITED STATES.

8

9    S/Shawn McRoberts             10/04/2024

10   _____DATE_____
     SHAWN McROBERTS, RMR, CRR
11   FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25