# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SPORTSCASTR INC. (d/b/a PANDA INTERACTIVE), | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-00472-JRG |
| SPORTRADAR GROUP, AG, and SPORTRADAR AG, | § § § | (LEAD CASE) |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| SPORTSCASTR INC. (d/b/a PANDA INTERACTIVE), | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-00471-JRG |
| GENIUS SPORTS LTD., ET AL., | § § § | (MEMBER CASE) |
| *Defendants*. | § § | |

## ORDER

Before the Court are Plaintiff SportsCastr Inc. d/b/a PANDA Interactive's ("Plaintiff") Motion to Compel the Sportradar Defendants to Provide an ESI Deposition and Additional ESI Relief (Dkt. No. 113), Motion to Compel the Sportradar Defendants to Produce Documents and Provide Responses to Interrogatories Regarding Financial Data and Customer Usage Data (Dkt. No. 116), and Motion to Compel the Sportradar Defendants to Provide Response to Interrogatories (Dkt. No. 120) (collectively, the "Motions to Compel"). In the Motions to Compel, Plaintiff asks the Court to order Defendants Sportradar Group AG and Sportradar AG (together, the "Sportradar Defendants") (collectively with the Plaintiff, the "Parties") to make a knowledgeable witness available for an ESI deposition, produce a variety of documents, and provide adequate responses to a number of interrogatories. (*See* Dkt. Nos. 113, 116, and 120.)

After initially reviewing the Motions to Compel and the subsequent briefing, the Court ordered the Parties to meet and confer in person and then file a Joint Status Report within 48 hours of such meet and confer. (*See* Dkt. No. 123.) On February 13, 2025, the Parties filed their Joint Status Report. (Dkt. No. 125). Having reviewed the Motions to Compel and the Parties' Joint Status Report, the Court finds that the Parties resolved several portions of the Motions to Compel and arrived at an impasse on the remaining issues. The Court further finds that the Motions to Compel should be and hereby are **GRANTED-IN-PART** and **DENIED-IN-PART**.

I. **Plaintiff's Motion to Compel the Sportradar Defendants to Provide an ESI Deposition and Additional ESI Relief (Dkt. No. 113):**

**ESI Deposition**. The Sportradar Defendants are **ORDERED** to comply with the ESI Order (Dkt. 45) and make a deponent available to "identify the proper custodians, proper search terms, and proper time frame for e-mail production requests" by or before April 7, 2025. The Court further notes that the Sportradar Defendants have requested clarification and guidance as to what questioning is properly within the scope of the ESI Order. (Dkt. No. 118 at 2-3.) Accordingly, after reviewing Plaintiff's fourteen proposed subjects (Dkt. No. 113-1), which the Sportradar Defendants contend exceeds the scope of the ESI Order, the Court finds that the following subjects would allow Plaintiff to identify the proper custodians, search terms, and time frame for e-mail production requests and are proper in this case under the Parties' currently agreed ESI Order:

a. Why each of Sportradar's most likely email custodians were identified;
b. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) that have had any communication with any of Sportradar's competitors, including Genius Sports, PANDA, StatsPerform, or IMG Arena, including which competitor(s), the subject matter of those discussions, and the time periods;
c. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) that have accessed, viewed, studied, investigated, viewed a presentation of, or otherwise were aware of any PANDA products or Patents prior to the filing of this lawsuit, including the time periods;

    d. Sportradar's ESI systems, including whether each subsidiary has its own email system (including using separate servers, separate domains, etc.), and whether the Defendants in this case have access to any such separate system;
    e. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) that are most likely to have ESI discussing latency and synchronization in the accused products, and the time periods thereof;
    f. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) that are most likely to have ESI concerning the selection and use of Livelike;
    g. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) who are likely to have emails concerning in-game betting, pre-game betting, watch & bet products, and the comparison between them, and the time periods thereof;
    h. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) who are likely to have emails concerning negotiations and agreements (including to data rights, cross selling, revenue sharing, ownership interests) with any of the major Sportsbooks, including BetMGM, Fanduel, DraftKings, Caesars, ESPNBets, and BetRivers, and the time periods thereof; and
    i. Sportradar employees and former employees (and anyone else that used a Sportradar ESI or email system) who are likely to have emails concerning negotiations and agreements (including to data rights, cross selling, revenue sharing, ownership interests) with any of the major sports leagues, including NBA, NFL, MLB, NHL, and Premier League Soccer, and the time periods thereof.

To further assist in limiting the scope, any such ESI deposition is limited to two (2) hours.

    **Search Terms**. The Sportradar Defendants are furthered **ORDERED** to provide the ESI responsive to Plaintiff's most revised set of search terms for the three custodians as identified in Dkt. No. 113-3. The Court understands that the Sportradar Defendants object to the Plaintiff's use of "OR" operators on the basis that it causes Plaintiff to exceed the number of search terms per custodian. (Dkt. No. 118 at 6-7.) However, the Court finds that Plaintiff initially proposed search terms that were within the requirements of the ESI Order (i.e., limited to ten terms per custodian) and only submitted revised terms in efforts to reduce the number of "hits" because the Sportradar Defendants objected to the "sheer volume" of relevant discovery. (Dkt. Nos. 118 at 6-7; 113-3.) The Sportradar Defendants cannot have it both ways. Either they accept the initial search terms that complied with the ESI Order and resulted in a large volume of responsive ESI, or they accept

3

the Plaintiff's effective attempts to narrow the results using conjunctive/disjunctive operators. After reviewing Plaintiff's Initial Set of Search Terms (which appear to contain initial terms, revised terms, and second revised terms), the Court finds that the initial terms (where not subsequently revised) and the revised terms are allowable in this instance. For example, the initial term "patent*" is appropriately narrowed using "OR" operators followed by variants of the asserted patents as shown in the revised terms column, even though the Sportradar Defendants would have the Court count this revised term as fifteen search terms. (*See* Dkt. No. 118 at 7 (counting 61 terms related to Altarmirano); *c.f.,* Dkt. No. 113-3.) Where the disjunctive combination of multiple words or phrases consists of the same or similar words, the Court finds that such use is allowable with respect to this Motion and under the ESI Order in this case. Moving forward, however, the Court expects the Parties to increase their use of "narrowing search criteria (e.g., 'and,' 'but not,' and 'w/x') to . . . limit the production," as provided by the Parties' ESI Order. (Dkt. No. 45 at 5.) Such efforts would likely limit the need for Court intervention moving forward.

**ESI Custodians**. Finally, Plaintiff's request that the "number of permitted ESI custodians be increased from five to eight" is **DENIED**. The Court finds that Plaintiff's argument that it is "unclear how PANDA can choose just two of these *ten* email custodians" is unpersuasive given that the ESI Order notified the Parties to specifically identify the "*fifteen* most significant listed e-mail custodians." (Dkt. Nos. 113 at 6; 45 at 4) (emphasis added).

II. **Plaintiff's Motion to Compel the Sportradar Defendants to Produce Documents and Provide Responses to Interrogatories Regarding Financial Data and Customer Usage Data (Dkt. No. 116):**

**Interrogatory No. 9**. In light of the Sportradar Defendants' representation that they have previously produced the requested pricing, sales, and revenue, by product, and have agreed to provide information to assist Plaintiff in better understanding the disclosures, to periodically

4

supplement the financial information based upon elapsed time, and to produce cost information regarding the Accused Products by March 7, 2025 (Dkt. No. 125 at 1-2), Plaintiff's motion to compel as to that particular portion of Interrogatory No. 9 is **DENIED AS MOOT**.

However, the Court finds that the remaining portion of Plaintiff's request—i.e., for an order compelling the Sportradar Defendants to provide profit information and financial information from advertising associated with the Accused Products, which the Sportradar Defendants do not address in the Joint Status Report (Dkt. No. 125 at 2) and which is requested by Interrogatory No. 9—should be and hereby is **GRANTED**. Accordingly, the Sportradar Defendants are **ORDERED** to supplement their response to Interrogatory No. 9 by April 7, 2025, to describe in detail the profit information and the financial information from advertising associated with each Accused Product, from the time of the first release, sale or license, offer to sell or license, or transfer of each Accused Product until the present.

**Interrogatory No. 10**. In light of the Parties' representation that the Sportradar Defendants supplemented their response to Interrogatory No. 10 on January 24, 2025, and have agreed to assess whether other projection documents exist and then produce such documents (Dkt. No. 125 at 2-3), the Court finds that Plaintiff's request for an order compelling the Sportradar Defendants to supplement their response to Interrogatory No. 10 is and should be **DENIED AS MOOT**.

**Usage Data**. In light of the Sportradar Defendants' agreement to produce session usage data of the Accused Products in the U.S. by U.S. customer and to further investigate and produce relevant betting data (Dkt. No. 125 at 3-4), the Court finds that Plaintiff's request for an order compelling the Sportradar Defendants to produce comprehensive usage data should be and is hereby **DENIED AS MOOT**.

### III. Plaintiff's Motion to Compel the Sportradar Defendants to Provide Response to Interrogatories (Dkt. No. 120):

**Interrogatory No. 11**. The Parties represent that the Sportradar Defendants have agreed to provide a supplement identifying and describing the already produced source code in the form of the Sportradar Defendants' original response. (Dkt. No. 125 at 5.) However, Plaintiff contends that the Sportradar Defendants have "refused to provide its position on whether it will either produce source code for all relevant versions of the accused products, or stipulate that the produced code is representative." (*Id.*) The Sportradar Defendants' not only represent that they have, in fact, produced source code for multiple versions of various Accused Products, but also that this separate request is not covered by an interrogatory. (Dkt. No. 122 at 2.) Accordingly, the Court finds that Plaintiff's request for an order compelling the Sportradar Defendants to supplement their response to Interrogatory No. 11 should be and hereby is **DENIED AS MOOT**.

**Interrogatory Nos. 16 and 21**. Based on the Parties' Joint Status Report (Dkt. No. 125 at 6), the Court finds that this portion of Plaintiff's request should be and hereby is **DENIED AS MOOT**.

**Interrogatory No. 17**. In light of the Parties' agreement that Defendant will "assess how they may be able to provide a narrative and to provide information to assist Plaintiff's counsel in understanding responsive information contained in already-produced documents" (Dkt. No. 125 at 6), the Court finds that this portion of Plaintiff's Motion should be and hereby is **DENIED AS MOOT**.

**Interrogatory Nos. 18 and 19**. In light of the Parties' agreement that Defendants have "agreed to supplement [its] responses to identify the revenue for each Accused Product" (Dkt. No. 125 at 6), the Court finds that this particular portion of Plaintiff's motion should be and hereby is **DENIED AS MOOT**.

However, the Court further finds that Plaintiff's request for an order compelling the Sportradar Defendants to provide all the remaining requested information—i.e., the amount of revenue and the basis for why the Sportradar Defendants contend that the revenue is not attributable to, or otherwise subject to a reasonable royalty for, the Accused Product—should be and hereby is **GRANTED**. Accordingly, the Sportradar Defendants are **ORDERED** to provide the remaining information requested by Interrogatory Nos. 18 and 19 by April 7, 2025.

**Interrogatory No. 20**. In light of the Parties' representation that the Sportradar Defendants will provide an amended response reflecting that they have not identified any responsive comparisons and will further supplement their response if needed (Dkt. No. 125 at 7), the Court finds that Plaintiff's request as to Interrogatory No. 20 should be and hereby is **DENIED AS MOOT**.

**Interrogatory No. 23**. The Court finds that Plaintiff's request for the Court to order the Sportradar Defendants to "[d]escribe all the corporate officers for Sportradar Group AG, Sportradar AG, and each of their subsidiaries and affiliates (including but not limited to each of the entities listed in Sportsradar Group AG's 2023 Annual Report), including identifying each such Person and describing their roles in each entity," should be and hereby is **GRANTED-IN-PART**. Accordingly, it is **ORDERED** that by April 7, 2025, the Sportradar Defendants must identify all the corporate officers for: (1) Sportradar Group AG, (2) Sportradar AG, (3) the Sportradar Defendants' two U.S. entities (including but not limited to Sportradar Solutions LLC and Sportradar US LLC), (4) the seven entities that the Sportradar Defendants mention in the Joint Status Report (Dkt. No. 125 at 8), and (4) all subsidiaries of which Sportradar Defendants' initial disclosures identify has having employees who it considers relevant witnesses with knowledge of the development and marketing of the Accused Products.

**Interrogatory No. 26**. In light of the Parties' representation that Defendants have agreed to provide a high-level supplemental response on or before March 7, 2025, and to assess whether additional competitive documents exist and should be produced (Dkt. No. 125 at 8-9), the Court finds that Plaintiff's Motion to Compel as to Interrogatory No. 26 should be and hereby is **DENIED AS MOOT**.

**Interrogatory No. 27**. In light of the Parties' representation that the information had been produced, and that Defendants will supplement their response to identify or point to those documents by March 7, 2025, the Court finds that Plaintiff's Motion to Compel as to Interrogatory No. 27 should be and hereby is **DENIED AS MOOT**.

**Interrogatory No. 28**. In light of the Parties' representation that Defendants will provide a "10,000-foot level" supplement (Dkt. No. 125 at 9), the Court finds that Plaintiff's Motion to Compel as to Interrogatory No. 28 should be and hereby is **DENIED AS MOOT**.

**CONCLUSION**

As ordered above, the Court finds that the Motions to Compel (Dkt. Nos. 113, 116, and 120) should be and hereby are **GRANTED-IN-PART** and **DENIED-IN-PART**.

**So ORDERED and SIGNED this 25th day of March, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE