IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SPORTSCASTR INC.<br>(d/b/a PANDA INTERACTIVE),<br><br>　　Plaintiff,<br><br>v.<br><br>SPORTRADAR GROUP, AG, and<br>SPORTRADAR AG,<br><br>　　Defendants. | Civil Action No. 2:23-cv-00472-JRG<br>(LEAD CASE) |
| SPORTSCASTR INC.<br>(d/b/a PANDA INTERACTIVE),<br><br>　　Plaintiff,<br><br>v.<br><br>GENIUS SPORTS LTD.,<br>GENIUS SPORTS MEDIA LTD.,<br>GENIUS SPORTS TECHNOLOGIES LTD.,<br>GENIUS SPORTS UK LTD.,<br>GENIUS SPORTS GROUP LTD.,<br>MAVEN TOPCO LTD.,<br>MAVEN MIDCO LTD.,<br>MAVEN DEBTCO LTD., and<br>MAVEN BIDCO LTD.,<br><br>　　Defendants. | Civil Action No. 2:23-cv-00471-JRG<br>(MEMBER CASE) |

**PLAINTIFF'S CORRECTED RESPONSE TO DEFENDANTS' MOTION
TO AMEND THE FIRST AMENDED DOCKET CONTROL ORDER**

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................................................ 3

    I.     Defendants delayed discovery by routinely ignoring communications for months ........ 3

    II.    Defendants failed to adequately meet and confer on this motion by never responding to PANDA's compromise of a one-month extension ........................................................... 4

LEGAL STANDARD .................................................................................................................... 6

ARGUMENT .................................................................................................................................. 6

    I.     Defendants have not even attempted to meet the legal standard for an extension. ......... 6

    II.    PANDA did not delay in bringing its antitrust claims. ...................................................... 6

    III.   Defendants' motion fails to identify any substantial new discovery necessitating an extension. ............................................................................................................................. 8

        A.   Third Party Discovery Can Be Completed Under the Existing Schedule ....................... 8

        B.   Party Discovery Can Be Completed Under the Existing Schedule ............................... 10

    IV.   There is no reason to extend any patent-related deadlines. ............................................ 11

        A.   PANDA's antitrust allegations do not alter its pre-existing patent claims. .................... 11

        B.   Defendants are responsible for the state of claim construction briefing, which has already begun. ................................................................................................................ 12

    V.    Defendants seek an extension to aide their efforts to obtain relief from the PTAB. ...... 13

    VI.   Defendants' proposed amendment introduces numerous unbriefed issues ................... 14

# **TABLE OF AUTHORITIES**

**Cases:**

*Apple Inc. v. Fintiv, Inc.*,
IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) ............................................................................14

*Biological Processors of Ala., Inc. v. N. Ga. Env't Servs., Inc.*,
No. 09-mc-3673, 2009 WL 2160984 (E.D. La. July 15, 2009) ........................................................9

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) .......................................................................................................11

*Dean v. Foods*, No. 9:21-cv-0005,
2022 WL 20112617 (E.D. Tex. Sept. 26, 2022) ..............................................................................8

*Reliance Ins. Co. v. Louisiana Land and Exploration Co.*,
110 F.3d 253 (5th Cir. 1997) ...........................................................................................................6

*StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*,
No. 4:17-cv-303-ALM, 2019 WL 9901442 (E.D. Tex. 2019) .........................................................6

**Other Authority:**

Fed. R. Civ. P. 16(b)(4) ....................................................................................................................6
P.R. 3-4(a) .......................................................................................................................................13
P.R. 4-1(b) .......................................................................................................................................13
P.R. 4-2(c) .......................................................................................................................................13
P.R. 4-5(c) .......................................................................................................................................13

These cases were filed on October 5, 2023—nearly 18 months ago. Dkt. 1. As it stands, these cases will not reach trial until over two years after filing. Dkt. 93. Defendants now move to extend this schedule another seven months, seeking a trial date ***over 32 months*** after this litigation began. Defendants' motion is the latest example of their dilatory and obstructionist tactics following their repeated failures to meet deadlines and delays in producing fundamental discovery. Their pattern of dilatory and obstructionist behavior not only reflects their deep concerns regarding the merits of their defense but also undermines the orderly progression of this case.

Defendants' requested extension risks placing this action on the Civil Justice Reform Act's "three year list." 28 U.S.C. § 476. It also increases the likelihood that PANDA's patent claims will be decided not by this Court but by the Patent Trial and Appeals Board, which is currently considering ***twenty*** petitions for *Inter Partes* Review filed by Defendants—six already instituted.

A seven-month extension is not warranted by the facts. PANDA filed its Amended Complaints (Dkts. 126, 127) within the deadlines established under the agreed Docket Control Order ("DCO"), which provides for over four months of discovery between the deadline to amend pleadings and the deadline to complete fact discovery (Dkt. 93). The discovery needed for the antitrust claims substantially overlap with PANDA's pre-existing patent claims, and any additional discovery that is necessary can be completed in the four months allowed under the existing schedule. In fact, Defendants do not identify any actual categories of documents that must now be produced, or witnesses who must be deposed, due to the addition of the antitrust claims. Instead, Defendants focus on the different legal theories and elements for patent and antitrust claims without recognizing the substantial overlap in the relevant evidence. *See, e.g.*, Dkt. 142 at 5.

Defendants' tactics of delay and obstruction are to blame for the vast majority of the remaining discovery in this case. The bulk of the remaining discovery in this case had already been

1

requested when PANDA filed its antitrust claims. Defendants have not even attempted to complete the discovery that was pending when the antitrust claims were filed. They have resisted discovery at every turn—forcing PANDA to file over half a dozen motions to compel (2:23-cv-471, Dkts. 49, 57; 2:23-cv-472, Dkts. 52, 54, 113, 116, 120). In fact, three of PANDA's motions to compel against Sportradar are pending and relate to the vast majority of the document discovery that remains in this case—especially, ESI and email discovery. *See* Dkt. 125. PANDA stands ready, willing, and able to complete its email productions within weeks, and has produced most of its emails already without any reciprocation.

Defendants' motion is entirely based on hypotheticals. They have not even attempted to comply with the Court's order to complete discovery by June, or meaningfully meet and confer regarding the requested extension. PANDA offered a month extension, including a separate substantial completion deadline for new discovery requests related to the antitrust claims, but Defendants have continued their strategy of delay and obstruction.

PANDA is not the dilatory party here—it filed its antitrust claims soon after receiving discovery confirming the underlying facts. Defendants resisted for months—and continue to resist—discovery into contracts and negotiations relevant to PANDA's antitrust claims. PANDA even needed to file a motion to compel one such agreement between Defendants relating to one of the Tying Markets (Dkt. 83), but Defendants did not produce the agreements until mid-January, a month before PANDA filed its Amended Complaints. In any event, PANDA met the Court's deadline for amendments. Defendants should meet the Court's deadlines too.

Defendants' motion should be denied. The parties should be ordered to proceed with discovery under the existing schedule, which is entirely possible if the Court resolves PANDA's pending motions to compel within the next couple of weeks. *See* Dkt. 125. If it becomes apparent

that certain deadlines cannot be met, the Court can address discrete issues that remain, if any, rather than extending the schedule by seven months based only on hypotheticals. A seven-month delay would be a windfall to Defendants that rewards them for their delay and obstruction tactics. PANDA recognizes that an extension may become necessary at some point if Defendants continue their strategy. But an extension at this stage will allow Defendants to put off their ESI and email discovery until the last minute, which may necessitate further extensions beyond seven months in order for PANDA to obtain the discovery it needs to prosecute its case. More than enough time is left in the existing schedule to complete discovery, but only if Defendants feet are held to the fire.

## FACTUAL BACKGROUND

**I.  Defendants delayed discovery by routinely ignoring communications for months**

On March 5, 2024, PANDA sent a letter to Genius detailing categories of relevant documents that must be produced pursuant to paragraph 3(b) of the Discovery Order. Ex. A. On May 1, 2024, PANDA sent a substantially similar letter to Sportradar. Ex. B. As explained below, these letters identified the vast majority—if not all—of the categories of discovery that Defendants contend are still incomplete.

The Court entered e-discovery orders on August 20, 2024 (Dkt. 45) (between PANDA and Sportradar) and December 02, 2024 (Dkt. 103) (between PANDA and Genius). Defendants have thus far refused to produce any email communications pursuant to these orders.

Paragraph 9(a) of the Discovery Order provides a detailed procedure for addressing discovery disputes, including a requirement to "promptly meet and confer" as well as providing written responses to outstanding issues "within 14 days." Dkt. 92 ¶ 9(a). Despite this order, Defendants have regularly failed to timely respond to communications from PANDA regarding discovery deficiencies or provide their availability in response to requests for meet and confer.

3

Because the examples are too numerous to list, PANDA provides this non-exhaustive list of examples:

PANDA sent a letter to Genius on October 23, 2024, detailing numerous deficiencies in Genius's discovery responses. Ex. C. Despite over half a dozen requests, Genius did not provide availability to meet and confer on these issues until December 23, 2024. *See* Ex. D.

As detailed in PANDA's pending motion to compel (and undisputed in Sportradar's response), beginning December 12, 2024, PANDA sent Sportradar half a dozen emails over the course of a month requesting a meet and confer regarding Sportradar's deficient interrogatory responses. Dkt. 120 at 1-2, 8-9. Sportradar never offered its availability to meet and confer, forcing PANDA to file its motion without a meet and confer on January 13, 2025.

On March 5, 2025, PANDA sent Genius a letter detailing categories of documents it believed were relevant and asking Genius to confirm it would produce them. Ex. E. On March 10, 2025, PANDA sent Sportradar a similar letter. Ex. F. Neither Defendant has provided availability to meet and confer as required by Paragraph 9(a) of the Discovery Order and Local Rule CV-7(h). Despite scheduling a meet and confer on March 21, Genius's lead counsel did not attend the call and Sportradar's lead counsel and local counsel were not knowledgeable on the issues. Neither letter was addressed during the meet and confer. Wood Decl. ¶ 18.

## II. Defendants failed to adequately meet and confer on this motion by never responding to PANDA's compromise of a one-month extension

On February 14, PANDA filed its Third Amended Complaint against Genius (Dkt. 127) and Second Amended Complaints against Sportradar (Dkt. 126) (collectively, the "Amended Complaints") on the deadline to amend pleadings set by the Court. Dkt. 93 at 6.

4

On February 19, Sportradar indicated for the first time that it intended to move for an extension of the schedule based upon the Amended Complaints. Ex. G at 1. Sportradar did not indicate what kind of extension it would seek or when it would provide its proposal to PANDA.

On Friday, February 28, two weeks after the Amended Complaints were filed, Sportradar sent its proposal to PANDA. Ex. H at 7. Sportradar's proposal altered every single deadline in the existing Docket Control Order (including patent deadlines even though PANDA's patent allegations have not changed), altered the length of time between certain deadlines, and added brand new deadlines that the parties had never discussed. Neither Sportradar's proposal nor the email transmitting it offered any explanation for any of these proposed changes and additions. In the same email, Sportradar demanded a meet and confer on its proposal either the same day, over the weekend, or on Monday.

PANDA participated in a meet and confer regarding Sportradar's proposal on March 4, when PANDA made clear that it would quickly provide a counter-proposal. *See id.* at 3-5. On March 6, PANDA provided its initial counter-proposal to Sportradar. *Id.* at 1. PANDA indicated that it did not believe an extension was necessary but was willing to work with Sportradar to reach a compromise. *Id.* To that end, PANDA proposed a 1-month extension of the schedule, which included a separate substantial completion deadline for additional discovery relating to the separate antitrust claims. Dkt. 143-1 at 8.

PANDA did not hear back from Sportradar until Sportradar filed its motion on March 7. Wood Decl. ¶ 9. One week later, Genius joined Sportradar's motion. Dkt. 146.

On March 13, PANDA agreed to a four-week extension of the substantial completion deadline for documents relevant to its antitrust claims. Dkt. 145.

5

## LEGAL STANDARD

Once a scheduling order is entered, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The Fifth Circuit has stated four factors trial courts must consider when determining whether good cause exits to allow a deviation from the court's scheduling order: (1) the explanation for the failure to [complete the discovery within the deadline]; (2) the importance of the [modification of the deadline]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 4:17-CV-303-ALM, 2019 WL 9901442, at *7 (E.D. Tex. 2019) (alterations in original); *see also Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997).

## ARGUMENT

### I.  Defendants have not even attempted to meet the legal standard for an extension.

Defendants do not even identify—let alone attempt to meet—the legal standard for modification of a scheduling order. Indeed, even a cursory analysis of the familiar "four factors" demonstrates that Defendants' motion fails to meet the legal standard. Because determining what discovery may not be concluded by the deadline is at best a guessing game at this juncture, it is impossible to evaluate potential prejudice or whether a (still further) extension could alleviate that prejudice.

The Court should deny Defendants' blanket request for an extension of all deadlines based on a hypothetical failure to complete discovery on time. Instead, the Court should wait until a discrete issue arises meriting consideration of a potential extension (should such an issue arise).

### II.  PANDA did not delay in bringing its antitrust claims.

Defendants' motion implies that PANDA merely sat on obvious antitrust claims for months. Not so. PANDA first uncovered Defendants anticompetitive activities via discovery in this action.

6

For example, Defendants' service agreements with their sportsbook customers evidence the anticompetitive ties that form the basis of PANDA's antitrust complaints. *See, e.g.*, Dkt. 126 ¶ 24; Dkt. 127 ¶ 24. But, likely aware of their potential liability, Defendants have fiercely resisted discovery of those contracts—despite their relevance to PANDA's patent claims. Defendants resisted for months producing an agreement between Genius and Sportradar regarding the division of data rights relating to the English Premier League, forcing PANDA to file a motion to compel. Dkt. 54. In that motion, PANDA explained why the agreement for data rights was relevant to its patent claims. *See, e.g.*, *id.* at 7 ("Transmission of the betting data … meets certain limitations of PANDA's Asserted Claims. The amounts that Sportradar and Genius pay to obtain betting data and live stream these events will allow PANDA to apportion the value attributable to the inventions claimed in the Asserted Patents."). PANDA filed its motion to compel in September but did not receive the agreement itself until mid-January, just one month before it filed its Amended Complaints.

PANDA's motion to compel made clear that agreements related to betting data—which is transmitted by the Accused Products—are relevant to PANDA's patent claims. Yet, while Defendants dropped their opposition to PANDA's motion to compel their agreement regarding Premier League data, Defendants have continued to oppose production of other agreements related to official data rights. Defendants *still* have not provided complete discovery into their agreements with the sports leagues or their negotiations with customers. For example, Genius only recently completed production of its contracts with customers. And Sportradar still has not produced its data rights agreements with sports leagues.

PANDA filed its Amended Complaints on the deadline to do so under the Court's DCO. PANDA's compliance with the DCO does not provide any justification to extend the DCO.

7

### III. Defendants' motion fails to identify any substantial new discovery necessitating an extension.

Despite claiming that their requested extension is merited by supposed additional discovery, Defendants' motion focuses almost entirely on the legal issues that must be established to prove antitrust liability. PANDA will not waste the Court's time by addressing all Defendants' mischaracterizations of the antitrust laws and the nature of PANDA's antitrust claims because any differences in the elements of antitrust and patent claims are not relevant to Defendants' motion. The relevant inquiry is whether any ***additional discovery*** needed for the antitrust claims can be completed within the existing schedule. To the extent Defendants still have a substantial amount of discovery to produce in this case, it is because of Defendants' strategy of delay and obstruction with respect to discovery requests that predated the antitrust claims.

#### A. Third Party Discovery Can Be Completed Under the Existing Schedule

Much of Defendants' motion is predicated on ***third party*** discovery that remains. PANDA has already served the vast majority (if not all) of the third party document and deposition subpoenas that it expects to serve in this case and believes it can obtain the discovery it needs under the existing schedule. Indeed, the vast majority of relevant documents and communications related to third parties are likely to be in ***Defendants'*** possession (such as contracts and communications). Defendants have not identified ***any*** substantial discovery that can only be obtained from third parties that necessitates an extension.

Three months is plenty of time to obtain any third-party discovery. Indeed, while Defendants seem to have grown accustomed to proceeding at a glacial pace (taking months to respond to simple discovery requests), ***reasonable*** parties should have no issue responding to discovery requests within a couple weeks. *See, e.g.*, *Dean v. Foods*, No. 9:21-cv-0005, 2022 WL 20112617 at *5 (E.D. Tex. Sept. 26, 2022) (noting that 14 days is generally considered a reasonable

8

time to respond to a subpoena); *Biological Processors of Ala., Inc. v. N. Ga. Env't Servs., Inc.*, No. 09-mc-3673, 2009 WL 2160984 at *3 (E.D. La. July 15, 2009) (same). However, if a particular third party believes it needs more time to comply with a subpoena, ***that third party*** can seek relief from the Court. There is no need to extend the schedule by seven months to accommodate hypothetical burdens to hypothetical third parties, especially when Defendants have not served any new document subpoenas since PANDA amended its complaints. PANDA, on the other hand, has begun its third party discovery of third parties related to the antitrust claims, and intends to complete that discovery by existing deadlines.

In their motion, Defendants describe what they contend is extensive third party discovery that remains, but much of what they describe is actually within their own custody and control. For example, Defendants assert that the parties will need discovery into "whether a substantial number of customers, comprising a substantial volume of commerce, were forced to purchase the alleged tied product." Dkt. 142 at 7. But the evidence relating to this issue is likely to be found in the parties' contracts, transactional and financial data, and communications with their customers—all material that both PANDA ***and Defendants*** previously requested months ago. Ex. A, Category Nos. 24-25 (financial data), Nos. 44, 50, 60 (contracts), Nos. 45-46, 60 (communications); Ex. B (same); Ex. I, Topics 55, 75 (financial data), 52 (contracts), 93 (communications). PANDA has already produced this material, despite Defendants' refusal to reciprocate.

This discovery should have been completed months ago. PANDA requested last spring that Defendants produce all agreements and communications from sports leagues and customers—including the NBA, NFL, MLB, NHL, NCAA, and English Premier League (*see* Ex. A, Category Nos. 44-46, 60; Ex. B, Category Nos. 44-46, 60). Yet, Sportradar *still* has not produced its agreements with the NHL, NBA, or MLB—let alone any others. Ex. J. Likewise, Genius has

9

refused to agree to produce all documents related to its negotiations with sports leagues and sportsbooks—despite demanding these same categories of documents from PANDA. Ex. K. Moreover, both parties have refused to respond to interrogatories asking them to describe their efforts to obtain business from their customers. Ex. L, Interrogatory No. 24; Ex. M, Interrogatory No. 28.

To the extent Defendants need additional discovery from any third parties, they should be ready to serve those requests now, having had more than a month to review the antitrust claims. If they end up not being able to obtain essential discovery from third parties before the end of fact discovery, they should raise that issue when it is ripe and not before they've even attempted to start third party discovery.

### B. Party Discovery Can Be Completed Under the Existing Schedule

With respect to party discovery, Defendants again focus on legal issues relevant to antitrust claims without identifying any new categories of discovery that must now be sought to address these issues, and that have not already been requested in the patent case.

As to discovery from PANDA, Defendants assert that discovery will be needed "to establish whether PANDA lost business due to the alleged unlawful conduct or to PANDA's unproven track record, low scale, higher costs, unwillingness to meet a customer's requested price, or any other form of competition on the merits." Dkt. 142 at 10. Even if PANDA's calculation of damages may be different under its antitrust and patent claims, PANDA's financial information and data necessary to perform and evaluate those damages have already been produced. *See* Dkt. 105 at 2.

Defendants also identify some factual issues that may be relevant to their own efforts "to protect its customers' data integrity, allow for ease of use, and reduce its customers' costs." Dkt.

142 at 10. But this information is within its own custody and control and can be produced by Defendants now. Moreover, PANDA has been requesting documents related to these issues since last spring, before even filing its antitrust claims. *See, e.g.*, Ex. A, Category No. 26 ("All documents and things relating to the … advantages of each feature or module of the Accused Product"); Ex. B, Category No. 26 (same).

Similarly, Defendants have been resisting discovery into Defendants' market share in the relevant markets for nearly a year. Ex. A, Category Nos. 48-49, 59; Ex. B, Category Nos. 48-49, 59; Ex. L, Interrogatory No. 22; Ex. M, Interrogatory No. 26. The parties respective market shares have been relevant since PANDA filed its patent claims. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1355 (Fed. Cir. 2001) ("To show 'but for' causation and entitlement to lost profits, a patentee must reconstruct the market …."). Yet, despite PANDA raising these issues months ago, Defendants have still not provided full discovery into the relevant market and their respective market shares. *See* Dkt. 120 at 6 (asking the Court to compel information regarding "Sportradar's or its competitors' market share").

As Defendants note, PANDA has already agreed to work with Defendants to accommodate any additional expert discovery that is needed. Defendants prematurely ended those negotiations by filing their motion. The Court should deny Defendants' motion and let those negotiations continue. A seven month extension is not necessary to accommodate expert discovery.

**IV.   There is no reason to extend any patent-related deadlines.**

  **A. PANDA's antitrust allegations do not alter its pre-existing patent claims.**

Defendants offer no explanation whatsoever why the addition of antitrust claims have any effect on PANDA's patent claims beyond the vague assertion that "PANDA's allegations intentionally intertwine the new antitrust allegations with its patent contentions." Dkt. 142 at 14. Defendants do not support this cursory assertion with any citations or references to PANDA's

11

allegations because there is no such support for this assertion. PANDA's antitrust allegations do not depend on or rely upon PANDA's patent claims, and vice versa.

### B. Defendants are responsible for the state of claim construction briefing, which has already begun.

Defendants claim that an extension of the claim construction schedule should be entered—and along with it, PANDA should be forced to narrow its claims—so that the Court does not "receiv[e] briefing on claim terms that are not actually in dispute." Dkt. 142 at 14. If the Court does receive briefing on claim terms that are "not actually in dispute" it will be because—despite numerous requests from PANDA—Defendants have **refused** to identify which of the ***40 disputed claim terms*** identified in the Joint Claim Construction and Prehearing Statement Defendants "actually" intend to dispute. Dkt. 124. Moreover, PANDA ***already submitted*** its Opening Claim Construction Brief on Friday, as required by the current DCO. Extending claim construction deadlines at this juncture would be prejudicial to PANDA.

To be clear, the current state of claim construction discovery is solely the fault of Defendants. PANDA has been demanding for months that Defendants disclose of the 40 identified claim terms Defendants intend to "actually … dispute" given the Court's 30-page briefing limits. Dkt. 142 at 14. Yet, Defendants have refused claiming that PANDA has asserted an unreasonable number of claims and that it should be forced to narrow its asserted claims before they will narrow their claim terms. Ex. N at 2. There is nothing unusual about the number of asserted claims PANDA has brought. PANDA's four asserted patents—which all cover related subject matter—is far from outlier given the wide-ranging patent disputes this Court often is called upon to address.

More to the point, Defendants argument gets case narrowing precisely backwards. The Court's model order—as recommended by the Local Rules Advisory Committee—set the narrowing deadline at the P.R. 4-4, ***after*** the parties are supposed to identify and narrow disputed

12

claim terms. *See* P.R. 4-1(b); P.R. 4-2(c).[1] The Committee selected this deadline precisely so that patentees could narrow with the benefit of 1) accused infringers' "documents sufficient to show the operation of the accused instrumentality" and 2) their "claim construction positions." General Order 13-10, commentary ¶ 3. Defendants provided neither of these disclosures in a timely manner. Defendants recently produced substantial source code in November 2024 (Sportradar) and February 2025 (Genius)—over half a year after each was required to produce the complete source code. *See* P.R. 3-4(a). In fact, Sportradar's production was the code for an entire Accused Product (Live Channel Online) that it somehow omitted entirely from its initial production.

PANDA still does not know which of the identified 40 disputed terms Defendants intend to actually brief to the Court. PANDA was forced to address all 40 terms in its Opening Claim Construction Brief. Giving Defendants weeks or months longer with PANDA's Opening Claim Construction Brief to select the claim terms they would "actually" like to dispute (which were supposed to be identified at the P.R. 4-1 deadline) when PANDA was not afforded the same opportunity would be fundamentally unfair. Claim construction briefing has already begun. It should continue under the current schedule.

V. **Defendants seek an extension to aide their efforts to obtain relief from the PTAB.**

Defendants' motion barely conceals Defendants' true goal—to obtain an extension of the trial date for PANDA's patent claims in order to allow the PTAB time to supplant this Court's role in deciding the patent issues.

Defendants have already filed ***twenty*** petitions for *Inter Partes* Review with the Patent Trial and Appeals Board in an attempt to take issues of invalidity away from this Court and place them in the hands of the PTAB. Wood Decl. ¶ 15. It is no coincidence that Sportradar seeks a seven-

---

[1] The parties agreed to a modified narrowing schedule that requires PANDA to narrow at the P.R. 4-5(c) deadline. Dkt. 147.

13

month extension to the trial schedule. Many of those petitions were filed by Sportradar late in the litigation, and a final determination in many of those proceedings will occur 7-8 months after the current trial date. *Id.* ¶ 17. Among the issues the PTAB will consider in determining whether to institute these petitions is the degree of investment this Court has already made in determining issues such as claim construction as well as the proximity of the trial date (which is threatened by an extension). *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 6 (PTAB Mar. 20, 2020). An extension would only further Defendants' goal to circumvent this Court's jurisdiction.

## VI.    Defendants' proposed amendment introduces numerous unbriefed issues.

Defendants' proposed amended docket control order does far more than just extend the case deadlines by seven months. It also alters the timing between various deadlines, resurrects other expired deadlines, and creates from whole cloth brand new deadlines not contemplated by the Court's model DCO. Many of these changes were neither briefed by Defendants nor discussed during the parties' brief meet and confer.

For example, Defendants' proposed schedule introduces a brand new third-party discovery deadline that Defendants do not even mention in their brief. Also unmentioned is Defendants' attempt to redo the Court's Protective Orders, Discovery Orders, and E-Discovery Orders. Defendants also claim that their proposed amendments "adjust the deadlines for filing motions *in limine*" without explaining *how* the deadlines were adjusted or *why*. Dkt. 142 at 13.

Moreover, in addition to adding new deadlines, Defendants proposed schedule alters the relative amount of time between deadlines in such a way that were the Court to attempt to modify the proposed amended schedule—for example, to grant a shorter extension than the one requested by Defendants—it would be exceedingly difficult for the Court to modify the proposed amendment without creating unintended consequences. This is not a task with which the Court should be burdened. Defendants' motion should be denied.

██████████████████████████████████████

Dated: March 25, 2025

Respectfully submitted:

By: /*s/ Matthew D. Wood*
Christopher C. Campbell (#444262 DC)
ccampbell@kslaw.com
Robert M. cooper (admitted *pro hac vice*)
rcooper@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 626-5578

Ross E. Elfand (admitted *pro hac vice*)
relfand@kslaw.com
Rahul Sarkar (*pro hac vice* to be filed)
rsarkar@kslaw.com
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
(212) 556-2100

Matthew D. Wood (#24110548)
mwood@kslaw.com
**KING & SPALDING LLP**
500 West 2nd Street
Suite 1800
Austin, TX 78701
(512) 457-2000

Greg Love (#24013060)
glove@cjsjlaw.com
Mark Siegmund (#24117055)
msiegmund@cjsjlaw.com
William Ellerman (#24007150)
wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES**
Bridgeview Center
7901 Fish Pond Rd., Second Floor
Waco, Texas 76710
Telephone: (254) 732-2242

Britton F. Davis (admitted *pro hac vice*)
**KING & SPALDING LLP**

15

1400 Lawrence Street, Suite 1900
Denver, CO 80202
(720) 535-2300
bfdavis@kslaw.com

Patrick Lafferty (admitted *pro hac*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 626-5578
plafferty@kslaw.com

*Attorneys for Plaintiff*

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify under Local Rule CV-5(a)(7)(B) that the foregoing Response is authorized to be filed under seal pursuant to Paragraph 16 of the Protective Order (ECF 94) because it contains Designated Material as defined in the Protective Order, namely, PANDA, Sportradar, and Genius confidential business information.

/s/ Matthew D. Wood

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record as being served with a copy of the foregoing document via electronic email on March 25, 2025.

/s/ Matthew D. Wood

16