# Exhibit E

# KING & SPALDING

King & Spalding LLP
500 W. 2nd Street
Austin, TX 78701
Tel: +1 512 457 2000
Fax: +1 512 457 2100
www.kslaw.com

Matthew D. Wood
mwood@kslaw.com

March 5, 2025

**VIA EMAIL**
James John Lomeo
Kirkland & Ellis LLP
James.lomeo@kirkland.com

Re:   *SportsCastr Inc. v. Genius Sports Ltd.*
      Consolidated Case No. 2:23-cv-472-JRG

Dear Jim:

In view of the new claims added to the amended complaint, we identify the following categories of documents for the time period 2017 - present, which are relevant to the newly added claims. To be clear, we believe many of these categories are relevant to the patent claims as well. However, they have particular relevance to the newly added claims and should be produced pursuant to Paragraph 3(b) of the Discovery Order.

1. All monthly, quarterly, and annual brand, sales, marketing, or product planning documents for the "Relevant Products" (i.e., all products alleged to be in the Tying Markets, Alternative Tying Market, and Tied Market as defined in the [Third] Amended Complaint, regardless of whether they have been accused of infringing any Asserted Patent).

2. All contracts and draft contracts relating to agreements with sports leagues and/or customers (including sportsbooks and media companies) regarding the Relevant Products.

3. All monthly, quarterly, and annual contracting strategy planning documents for contracts with all sports leagues relating to the Relevant Products.

4. All monthly, quarterly, and annual contracting strategy planning documents for contracts with all contracts with customers of the Relevant Products.

5. All communications with customers regarding contract negotiations for all Relevant Products.

6. All communications with sports leagues regarding contract negotiations for all Relevant Products.

March 5, 2025
Page 2

7. All communications with competitors regarding any agreements relating to any of the Relevant Products including, but not limited to, the FCD Settlement Agreement.

8. Summaries to executive leaders regarding any contracting strategies for contracts with sports leagues and/or customers relating to any of the Relevant Products.

9. Bonus structure and payments to sales team and/or account managers for their sales or deals relating to the Relevant Products.

10. Financial transactional data for all Relevant Products including, but not limited to:

    a. Unit sales for each match
    b. Match ID
    c. Event ID
    d. Competition ID
    e. League ID
    f. Customer/Sportsbook
    g. Product ID
    h. Revenue
    i. Rebates, discounts, and returns
    j. Gross to net after all rebates, discounts, returns, etc.
    k. Expenses
    l. Profits
    m. Net Gaming Revenue
    n. Jurisdiction/Location

11. All financial forecasts for the Relevant Products, including any forecasts projecting the impact on sales of any entry of competitors such as PANDA

12. Internal or third party procured usage data for all Relevant Products, including the following:

    a. Betting statistics on:
        i. Unit bets placed on each sport league
        ii. Match ID
        iii. Event ID
        iv. Competition ID
        v. League ID
        vi. Customer/Sportsbook
        vii. Revenue from each bet
        viii. Source of bet (sportsbook)
        ix. in person or online
        x. in game or pregame
        xi. event date
        xii. event time
        xiii. Net Gaming Revenue

March 5, 2025
Page 3

        xiv. Jurisdiction/Location
- b. Statistics on usage rates for various sports betting app technology products
    - i. Views for video overlay products
    - ii. Viewing time for video overlay products
    - iii. Match ID
    - iv. Event ID
    - v. Competition ID
    - vi. League ID
    - vii. Customer/Sportsbook
    - viii. Event date
    - ix. event time
    - x. Jurisdiction/Location
- c. Statistics on usage rates for official league data versus unofficial league data



March 5, 2025
Page 4



 We also draw attention to your supplemental Interrogatory responses served on February 14, 2025 and your letter dated February 11, 2025. While Genius has supplemented its response to Interrogatory No. 23 to identify its top 15 customers it still has not supplemented its response to Interrogatory No. 24 to explain its efforts to obtain this business. We disagree with your statement that PANDA considered narrowing the scope of Interrogatory No. 24. Providing a basic description of Genius's efforts to obtain this business is not unduly burdensome and is central to both PANDA's claim for lost profits for patent infringement and PANDA's antitrust claims. Indeed, Sportradar recently agreed to provide a narrative response to this same Interrogatory. Dkt. 125 at 9. If Genius does not confirm by March 10 that it will provide this same information, PANDA will seek relief from the Court.

 We also note that Genius has demanded that PANDA produce all "documents related to PANDA CUB and any negotiations PANDA had with sportsbooks regarding PANDA CUB." Feb. 26 email from J. Lomeo. We have repeatedly asked for this same information from Genius regarding negotiations with sportsbooks regarding its Relevant Products. However, Genius has still not agreed to produce these documents and communications. If Genius does not confirm by March 10 that it will provide these documents and communications, PANDA will seek relief from the Court.

              Best regards,

              */s/ Matthew D. Wood*
              Matthew D. Wood