# Exhibit I

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SPORTSCASTR INC.<br>(d/b/a PANDA INTERACTIVE),<br><br>　　　　Plaintiff,<br><br>v.<br><br>SPORTRADAR GROUP, AG and<br>SPORTRADAR AG,<br><br>　　　　Defendants. | Civil Action No. 2:23-cv-00472-JRG. |
| SPORTSCASTR INC.<br>(d/b/a PANDA INTERACTIVE),<br><br>　　　　Plaintiff,<br><br>v.<br><br>GENIUS SPORTS LTD.,<br>GENIUS SPORTS MEDIA LTD.,<br>GENIUS SPORTS TECHNOLOGIES LTD.,<br>GENIUS SPORTS UK LTD.,<br>GENIUS SPORTS HOLDINGS LTD.,<br>GENIUS SPORTS GROUP LTD.,<br>MAVEN TOPCO LTD.,<br>MAVEN MIDCO LTD.,<br>MAVEN DEBTCO LTD.,<br>MAVEN BIDCO LTD.<br><br>　　　　Defendants. | Civil Action No. 2:23-cv-00471-JRG. |

**DEFENDANTS' NOTICE OF DEPOSITION TO SPORTSCASTR
PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Defendants Genius Sports Ltd., Genius Sports Media Ltd., Genius Sports Technologies Ltd. Genius Sports UK Ltd., Genius Sports Holdings Ltd., Genius Sports Group Ltd., Maven Topco Ltd., Maven Midco Ltd., Maven Debtco Ltd., and Maven Bidco Ltd. ("Defendants") hereby give notice of their intention to take the deposition upon oral examination of Plaintiff SportsCastr Inc. (d/b/a PANDA Interactive) ("PANDA"). The deposition will take place at the law offices of Kirkland & Ellis LLP, 401 Congress Avenue, Austin, Texas 78701, beginning on April 1, 2025 at 9:00am CDT, or on a date, time, and location to be mutually agreed upon in writing by counsel for the parties.

PANDA shall designate one or more of its officers, directors, managing agents, or other Persons with knowledge of the matters set forth in Attachment A of this Notice to appear and testify on its behalf at the deposition. The Person(s) so designated shall testify as to matters known or reasonably available to PANDA including without limitation all matters known or reasonably available to individuals identified in PANDA's initial disclosures in the above-captioned case. Pursuant to Fed. R. Civ. P. 30(b)(6), Defendants request that the parties promptly confer in good faith regarding the matters for examination.

The deposition will be conducted before an officer authorized to administer oaths and will continue from day-to-day until completed. The testimony at the deposition will be recorded by videotape, stenographic means, or both. You are invited to attend and cross-examine. Fact discovery, including document and email production, is ongoing and Defendants reserve the right to serve additional deposition notices on PANDA pursuant to Federal Rule of Civil Procedure 30(b)(6).

Dated: February 14, 2025

Respectfully submitted,

*/s/ Jeanne M. Heffernan*

Jeanne M. Heffernan
TBN 24128395
James John Lomeo
TBN 24118993
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100
jheffernan@kirkland.com
james.lomeo@kirkland.com

Joshua L. Simmons (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
joshua.simmons@kirkland.com

Patrick Arnett (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
patrick.arnett@kirkland.com

***Attorneys for Defendants Genius Sports Ltd., Genius Sports Media Ltd., Genius Sports Technologies Ltd., Genius Sports UK Ltd., Genius Sports Holdings Ltd., Genius Sports Group Ltd., Maven Topco Ltd., Maven Midco Ltd., Maven Debtco Ltd., and Maven Bidco Ltd.***

3

**ATTACHMENT A**

**DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. This deposition notice incorporates the following Definitions, which shall apply throughout these Definitions and Topics for Examination wherever a term is used, without regard to its capitalization:

1.    "Accused Products" means any instrumentality, device, or system that PANDA alleges infringes the Asserted Patents in This Action.

2.    "And" and "or" shall be construed conjunctively and disjunctively, as necessary, so as to give the broadest meaning possible.

3.    "Any" and "all" are interchangeable and shall be construed to mean "each and every," so as to give the broadest meaning possible.

4.    "Asserted Claim" means each claim of the Asserted Patents that PANDA alleges, in the Complaint or in subsequent pleadings, contentions, or disclosures, is infringed by one or more of the Accused Products, either directly or indirectly.

5.    "Asserted Patents" means U.S. Patent Nos. 10,425,697; 10,805,687; 11,039,218; and 11,871,088; and any Related Applications, including without limitation the applications that led to each Asserted Patent, any application to which any Asserted Patent claims priority, any application or patent that claims priority to any of the Asserted Patents, as well as any other patent that PANDA contends Defendants infringe.

6.    "Communication(s)" means any exchange of information by any method of transmission, sending, or receipt of information of any kind by or through any means including without limitation speech, writings, Documents, language (machine, foreign, or otherwise of any kind, computer electronics or electronic data, email, text message, instant message, sound, radio

1

or video signal, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types, or other media of any kind, and includes all Documents and ESI containing, summarizing, or memorializing any Communication.

7.    "Complaint" refers to the Second Amended Complaint filed in This Action at Docket Entry No. 81, on October 24, 2024, and any amendments thereto.

8.    "Concerning," "concerns," "referring to," "regarding," "related to," and "relating to" should be construed in the broadest possible sense to mean, either explicitly or implicitly: about, analyzing, commenting upon, comprising, constituting, containing, dealing with, describing, discussing, effecting, embodying, evaluating, evidencing, identifying, illustrating, including, incorporating, pertaining to, rebutting, referring to, reflecting, refuting, relating to, respecting, responding to, showing, stating, supporting, or in any way connected with the Topic.

9.    "Date" means the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation the year, month, week in a month, part of a month, or relative number of days, weeks, or months before or after another specified event.

10.    "Describe," "describe in detail," and "state" mean to state in detail what is requested to be described, including without limitation all facts and opinions known and held regarding what is requested to be described, and for each act, event, instance, occasion, transaction, conversation, or Communication relating to the Topic, shall mean to state the date and place; to identify the individual participants; to summarize separately for each individual participant what that Person said or did; and to identify each Document used or prepared in connection therewith or making any reference thereto.

11.    "Document" and "Thing" mean all materials, as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, any handwritten, printed, typed, recorded

2

photographic, and computer-generated materials of any kind or nature, however produced or reproduced, as well as material stored electronically, electromagnetically, mechanically, optically, and electronic recordings or transcripts thereof, and includes drafts, revisions of drafts, preliminary and preparatory materials, originals, copies, emails, attachments, exhibits, removable notes, and all translations and summaries thereof.  The terms also include all appendices, schedules, exhibits, and other attachments, as well as related and relevant metadata for all ESI, including without limitation information about the Document's author, creation date, revision dates, tracked changes, and electronic components.  A draft or non-identical copy of a Document is a separate Document within the meaning of this term.  Any Document with any part thereof bearing any annotations, comments, markings, notations, notes, "redlines," signatures or initials, stamps, or any textual or graphical information (whether handwritten, printed, or electronic) that is not part of the original electronic or physical copy is non-identical and therefore should be considered a separate Document.  A Document is in Your possession, custody, or control if You have either actual physical possession of a Document or constructive possession of the Document.  For the avoidance of doubt, the following are Documents: abstracts, advertisements, agreements, appointments, audits, booklets, books, brochures, calendars, calendar entries, charts, Communication (including without limitation those made via real-time collaboration tools, *e.g.*, Skype, Slack, Teams, and other chat or instant messaging platforms), correspondence, contracts, data, database contents, database schemas, diagrams, diaries, document management systems (*e.g.*, Confluence, Google Docs, Google Drive, SharePoint), drawings, emails, email attachments, expense reports, files, films, graphics, graphs, Internet or Intranet media or postings (*e.g.*, forum posts, comments, and wiki entries), invoices, journals, ledgers, logs (*e.g.*, access, call, change, error, event, server, telephone, and system logs), maps, meeting invitations and responses, memoranda, minutes,

mockups, newspapers, notes, organizational charts, photographs, posters, presentations, printouts, project management artifacts (*e.g.*, Project or Visio files, Gantt charts, and Jira entries), recordings (including without limitation recorded meetings or presentations conducted via platforms such as Zoom or Blue Jeans), receipts, recitals, records, reports, research, resumes, schedules, server contents (*e.g.*, FTP, HTTP, NFS, SMB, WebDAV); Source Code, spreadsheets, statements, storyboards, summaries (including without limitation those of conversations, data, interviews, negotiations, and financial or statistical information), tasks, text messages or their equivalent (*e.g.*, SMS, WhatsApp, and iMessage), time entries, to-do lists, voicemails, websites, whiteboards, working papers, and worksheets. An excerpt or portion of any of the foregoing is a separate Document.

12.     "Employee" means any Person who acted or purported to act on behalf of another Person, including without limitation all past and present directors, trustees, officers, executives, principals, partners, agents, representatives, attorneys, accountants, independent contractors, advisors, and consulting of such other Person or Persons, whether active or retired, full-time or part-time, and compensated or not.

13.     "Entity" means any business, proprietorship, firm, corporation, company, partnership, group, association, trade or industry association, non-profit, or governmental body or agency.

14.     "Functionality" or "functioning" means the technological and business processes that maintain, power, or otherwise enable a computer program or web-based service, including without limitation all underlying software, Source Code, databases, servers, and other technology.

15.     "Genius Sports Defendants" or "Defendants" means Genius Sports Ltd., Genius Sports Media Ltd., Genius Sports Technologies Ltd., Genius Sports UK Ltd., Genius Sports

Holdings Ltd., Genius Sports Group Ltd., Maven Topco Ltd., Maven Midco Ltd., Maven Debtco Ltd., and Maven Bidco Ltd., their present and former parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, Employees, interns, representatives, assigns, directors, or officers.

16.    "Identify," "identification," and "identity" mean, in general, to give the fullest description known or ascertainable to You, and specifically:

(a)    When used with respect to any natural Person, means to provide the Person's full name; last known home address and telephone number; last known business address and telephone number; last known title or occupation; and last known employer;

(b)    When used with respect to any Entity, means to provide the full legal name of the Entity; the Entity's place of incorporation or organization; the Entity's principal place of business; and the nature of the business conducted by the Entity.

(c)    When used with respect to Documents, subject to the option to produce records under Federal Rule of Civil Procedure 33(d), means to provide information sufficient to locate that Document, including without limitation the following: the Bates range, the date appearing on such Document, or, if no date appears thereon, the approximate date the Document was prepared; the identifying code number, file number, title, or label of such Document; a general description of such Document (*e.g.*, letter, memorandum, drawing, e-mail, or electronic file); the subject, title, heading, or file name; the number of pages of which the Document consists; the name of each Person who drafted, prepared, reviewed, signed, or authorized the Document; the name of each addressee or recipient; the name of each Person having possession, custody, or control of such Document at any time; if the Document existed at one time but does not presently exist,

the reason(s) why it no longer exists and the identity of the last Person who had custody of it; and if the Document is in a foreign language, whether an English translation of the Document exists, whether partial or complete;

(d)    When used with reference to any Communication, means to provide a summary of the Communication; the date and place of the Communication; each Person who was present during, involved in, connected with, or who participated in the Communication; and the form the Communication (*e.g.*, telephone call, meeting, letter, e-mail, or video conference); and

(e)    When used with reference to a tangible Thing that is not a Document or Communication, means that the following information shall be provided: (a) identify the product name(s), product number(s), version number(s), and revision number(s); (b) identify the date that the Thing was first introduced for sale, the date of the Thing's first sale; and (c) identify all team names, code names, or project titles used in connection with the design, development, testing, or engineering of that tangible Thing.

17.    "Include" or "including" shall be construed to mean including "but not limited to" or "without limitation," such that any list preceded by "include" or "including" should be read as a list of non-limiting examples within a broader category.

18.    "Longford Capital" means Longford Capital Management LP, Longford Capital Fund III, LP, and their present and former parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, investors or other persons or entities that own stock or otherwise maintain an ownership or financial interest in Longford Capital Management LP or Longford Capital Fund III, LP.

19.    "PANDA," "Plaintiff," "You," or "Your" shall mean SportsCastr Inc. (d/b/a PANDA Interactive), its present and former parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, companies in which PANDA owns stock or otherwise maintains an ownership interest, joint ventures, related entities, agents, attorneys, consultants, Employees, interns, representatives, assigns, directors, or officer and all other Persons acting or purporting to act on their behalf, and including without limitation any inventors of the Asserted Patents and all assignees or assignors of any right, title, or interest in and to the Asserted Patents.

20.    "Person" shall mean any natural person, alive or deceased, or Entity.

21.    "Practicing Product" shall mean any product that You contend is an embodiment of, or covered by, any Asserted Claim of the Asserted Patents, including but not limited to those products offered by PANDA, Defendants, or Third Parties, and regardless of whether that product is made under a license to the Asserted Patents.

22.    "Prior Art" shall mean the subject matter described in 35 U.S.C. §§ 102 or 103, including without limitation all patents, patent applications, printed publications, Documents, Things, or activities, including public uses, disclosures, sales or offers to sell, or any other information described in 35 U.S.C. §§ 102 or 103 that could relate to the validity of the Asserted Patents and/or Related Applications.

23.    "Related Applications" means any patent or patent application that claims priority from the Asserted Patents and any patent or patent application from which a claim of priority has been made in the Asserted Patents, including any divisional, continuation, CPA, or CIP application, any reissue, reexamination, or extension thereof, any foreign counterpart application, and any patent issuing from any of the foregoing.

24.     "Source Code" means the human-readable programming language text that defines software, firmware, or electronic hardware description, including without limitation files containing code in any programming or scripting language, such as C, C++, C#, Java, JavaScript, Perl, PHP, Python, or Ruby; any markup or presentation language, such as HTML, XML, or CSS; and any database language or commands, such as SQL. Source Code also includes without limitation configuration files, including files, header files, make files, link files, log files, settings files, generated output files, and other human-readable text files used in the generation and/or building of software and/or hardware.

25.     "Third Party" means any Person or Entity other than Defendants or PANDA.

26.     "This Case" or "This Action" refers to the above-captioned action, *SportsCastr Inc. (d/b/a PANDA Interactive) v. Genius Sports Ltd.*, Civ. No. 2:23-cv-471-JRG (E.D. Tex.), which is consolidated for pre-trial purposes with *SportsCastr Inc. (d/b/a PANDA Interactive) v. Sportradar Group, AG*, Civ. No. 2:23-cv-472-JRG (E.D. Tex.)*.

27.     "USPTO" means the United States Patent and Trademark Office and any Employees or agents of the USPTO.

28.     The singular form of each word shall be interpreted in the plural, and vice versa, so as to give each request the broadest possible scope.

29.     Regardless of the tense employed, all verbs shall be read as applying to past, present, and future as necessary to make any phrase more, rather than less, inclusive.

30.     Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

## <u>TOPICS FOR EXAMINATION</u>

1.      The preparation, filing, and prosecution of the Asserted Patents.

2.      The contributions of each named inventor for each of the Asserted Patents.

3.      Your awareness, knowledge, and understanding of Prior Art.

4.      Any alleged advantage or improvement provided by the alleged inventions claimed or disclosed by each Asserted Claim over the Prior Art.

5.      Any opinion, assessment, or evaluation made by or on behalf of You regarding the patentability, infringement, validity, utility, subject-matter eligibility, and/or enforceability of the Asserted Patents.

6.      Any litigation, lawsuit, judicial proceeding, arbitration, patent interference, opposition, or cancellation proceeding, appeal proceeding, reissue, or reexamination proceeding relating to the Asserted Patents other than This Case, including allegations of infringement against companies other than Defendants.

7.      The ownership and/or rights to the Asserted Patents, including the history of ownership and/or rights to the Asserted Patents, including both implied and express rights.

8.      Any public statements regarding the technology disclosed in the Asserted Patents.

9.      The priority date to which You contend each claim of each Asserted Patent is entitled, and the basis for Your contention.

10.     The first public use, demonstration, sale, and/or offer for sale of any Practicing Products or prototypes thereof and all subsequent uses, demonstrations, or sales of any aspect of the claimed subject matter of the Asserted Patents.

11.     Any objective indicia of non-obviousness You contend support the validity of each Asserted Claim of the Asserted Patents.

12.     Any Communication between PANDA and Third Parties related to the subject matter of the Asserted Patents.

13.     Your knowledge of any Practicing Product, including but not limited to the Accused Products, any products created or offered by Third Parties whether or not under a license to the Asserted Patents, and the "video-based social network" and "B2B software solution" created or offered by PANDA as identified in paragraph 14 of the Complaint.

14.     The ways in which any Practicing Product practices the Asserted Claims.

15.     The features, structures, function, configuration, components, and operation of each Practicing Product, including as documented or embodied in the specifications, design, technical requirements, schematics, Source Code, brochures, training materials, instruction manuals and materials, installation manuals, data sheets, retail kits, diagnostic manuals or programs, and other literature and printed materials that may describe their use or operation of such products.

16.     The research, design, development, implementation, and testing of any Practicing Product developed, marketed, sold, or offered for sale by PANDA or its licensees.

17.     The use or reliance on software developed by any Third Party in the research, design, development, implementation, and testing of any Practicing Product developed, marketed, sold, or offered for sale by PANDA or its licensees.

18.     PANDA's expenditures and costs for the conception, creation, research, design, and development of any Practicing Product.

19.     All efforts by, or on behalf of PANDA to market and/or sell any Practicing Product.

20.     Market and financial analyses of any Practicing Product, including market and financial analyses conducted by PANDA and/or any third-party market and financial analyses in PANDA's possession, custody, and control.

10

21.    All efforts and agreements by, on behalf of, or between PANDA and its licensees and/or distributors to satisfy the marking requirements of 35 U.S.C. § 287 in connection with the Asserted Patents.

22.    The date PANDA, its licensees, and/or distributors first marked any Practicing Product with the numbers of the Asserted Patents.

23.    The date PANDA, its licensees, and/or distributors first included the numbers of the Asserted Patents on its website.

24.    All documents PANDA intends to rely on for support that it satisfied the marking requirements of 35 U.S.C. § 287 in connection with the Asserted Patents.

25.    The earliest date PANDA contends Defendants had notice of the Asserted Patents and all circumstances surrounding that alleged notice, including the sender and recipients of the notice, the specific Asserted Patent(s) identified in such notice, and the specific Accused Product(s) identified in such notice.

26.    The technical and/or operational differences between PANDA Studio and PANDA Cub.

27.    The technical and/or operational differences between SportsCastr and PANDA Studio.

28.    Your understanding of how Livestream (as referenced at '697 Patent Col. 1 ln. 62–64) differs technically and/or operationally from the invention disclosed in the Asserted Patents.

29.    Your understanding of how Twitch.tv (as referenced at '697 Patent Col. 2 ln. 2–5; Col. 2 ln. 10–11; and Col. 2 ln. 31–32) differs technically and/or operationally from the invention disclosed in the Asserted Patents.

30.    Your understanding of how Musical.ly (as referenced at '697 Patent Col. 2 ln. 5–7) differs technically and/or operationally from the invention disclosed in the Asserted Patents.

31.    Your understanding of how Periscope (as referenced at '697 Patent Col. 2 ln. 12–13) differs technically and/or operationally from the invention disclosed in the Asserted Patents.

32.    Your understanding of how Facebook Live (as referenced at '697 Patent Col. 2 ln. 13–16 and Col. 2 ln. 32–34) differs technically and/or operationally from the invention disclosed in the Asserted Patents.

33.    The market or demand (whether historical, current, or expected) for any technology or invention embodied in the Asserted Patents.

34.    Any analyses or comparisons of PANDA's products past or present (including any Practicing Products) and any Accused Products.

35.    PANDA's business plans, including strategic plans, operating plans, marketing plans, financial plans, production plans, sales plans, and capital or investment plans, including those relating to each Practicing Product developed, marketed, sold, or offered for sale by PANDA or its licensees.

36.    PANDA's efforts to access, gather, or collect statistical data from sports leagues.

37.    PANDA's efforts to secure video content or video streaming rights from sports leagues.

38.    Any payments PANDA has made to sports leagues to access, gather, or collect statistical data from sports leagues.

39.    Any payments PANDA has made to sports leagues to secure video content or video streaming rights from sports leagues.

40.    PANDA's efforts to provide betting data (e.g., odds) to Third Parties.

41.     PANDA's efforts to license video content or video streaming rights from sports leagues to Third Parties.

42.     PANDA's efforts to license or provide statistical data from sports leagues to Third Parties.

43.     PANDA's efforts to license statistical data or video from ███████████ ███████████

44.     PANDA's business dealings with ███████ including the terms of any business agreement and the underlying rights exchanged as part of any business deal or relationship.

45.     PANDA's business dealings with ███████ including the terms of any business agreement and the underlying rights exchanged as part of any business deal or relationship.

46.     PANDA's actual or potential business dealings with sportsbooks in the United States, including the terms of any business agreement and the underlying rights exchanged as part of any business deal or relationship.

47.     PANDA's integrations with sportsbooks as referenced on its website at https://studiopanda.live/features#integrations.

48.     Any attempt to seek investment into PANDA, including during any fundraising rounds, valuations, investor presentations, or other efforts to sell or obtain investment in any business unit or Entity doing business using any invention claimed in any Asserted Patent.

49.     The implementation, marketing, promotion, or sales of PANDA's products, including any Practicing Product, by PANDA or its licensees.

50.     Promotional, sales, and marketing activities with respect to PANDA's products, including, but not limited to discounts and/or other incentives offered for the use, purchase, and/or license of PANDA's products.

13

51.     All facts and circumstances surrounding any demands, inquiries, offers, proposals, or negotiations to assign, buy, sell, transfer, convey, or license (whether or not any such transaction was completed) any rights to the Asserted Patents, including but not limited to the terms of any actual or potential license that PANDA has demanded from any Third Parties—including parties in the Sportradar Action—to practice the Asserted Patents, including but not limited to monetary payments, royalty rates, exclusivity, territorial scope, and length of such licenses.

52.     Any current, former, or planned agreements, understandings, partnerships, joint ventures, or other relationships You have or have had with any Third Party relating to the design, development, implementation, marketing, distribution, or provision of any Practicing Product.

53.     Any contracts, licenses, covenants not to sue, litigation settlement agreements, or other agreements, whether oral or written, referring or relating to the Asserted Patents or the technology disclosed in the Asserted Patents, including without limitation any negotiation of such agreements, whether or not any such agreement was executed.

54.     The identity of PANDA's customers.

55.     Any revenues received, prices charged, costs incurred, royalty rates charged, or royalties or profits earned by PANDA, its licensees, licensors, assignees, or assignors in connection with the Asserted Patents, or any products or services related to the Asserted Patents, including any licenses, sublicenses, or other agreements regarding the Asserted Patents or Related Applications, including without limitation any negotiation of such agreements.

56.     Any awards, accolades, or alleged industry recognition for PANDA's products or services, including any Practicing Products or other products or services related to the Asserted Patents, including the accolades and awards referenced in paragraph 15 of the Complaint.

57.     All facts related to Defendants' alleged infringement or induces infringement of one or more claims of the Asserted Patents.

58.     All facts related to Defendants' alleged willful infringement of one or more claims of the Asserted Patents.

59.     All facts related to the alleged performance by any party, including Defendants and any Third Parties, of each step of the asserted method claims of the Asserted Patents.

60.     All facts related to the alleged use or control, by any party—including Defendants and any Third Parties—of each element of the asserted system claims of the Asserted Patents.

61.     All notices of alleged infringement of any Asserted Patent You provided to Defendants prior to the filing of This Action, including the sender and recipients of the notice, the specific Asserted Patent(s) identified in such notice, and the specific Accused Product(s) identified in such notice.

62.     PANDA's knowledge of Defendants, including when PANDA first became aware of Defendants and/or their products and services or subsidiaries' products and services.

63.     All facts and circumstances surrounding PANDA's first awareness of Defendants' alleged infringement of the Asserted Patents through the Accused Products, including when and how PANDA learned of the alleged infringement.

64.     The facts underlying PANDA's business decision to file this Action, including the timing of the Action and any Documents and Communications considered by PANDA before deciding to file this Action.

65.     PANDA's Communications with Defendants prior to the filing of this lawsuit, including PANDA's reason(s) for communicating with Defendants at that time.

66.     All facts and circumstances regarding any in-person meetings, demonstrations, or presentations that PANDA gave to Defendants or that Defendants gave to PANDA.

67.     PANDA's Communications with Defendants or any Third Party referring or relating to alleged use, whether actual or potential, of the Asserted Patents or the technology disclosed in the Asserted Patents.

68.     PANDA's use or evaluation of any of Defendants' products, tools, software, services, Documents, websites, or marketing materials before the filing of This Action.

69.     PANDA's investigation of Defendants' alleged infringement, including any investigation of the Accused Products, comparisons between any of the Accused Products and the Asserted Patents, all products or software that PANDA accessed, purchased, inspected, or licensed for conducting such investigation, and the dates on which each was purchased, accessed, inspected, or licensed.

70.     PANDA's investigation of Defendants' financials, including but not limited to press articles and public financial statements.

71.     Any tests, analyses, surveys, investigations, research, or studies conducted by or on behalf of PANDA of any product or service that PANDA has at any time believed is covered by one or more claims of the Asserted Patents.

72.     Your knowledge of any acceptable and available non-infringing alternatives to the Asserted Claims of the Asserted Patents.

73.     All payments made to Defendants by PANDA or on PANDA's behalf, including but not limited to by ██████████████

74.    PANDA's revenues, expenses (including, but not limited to COGS, SG&A, R&D, overhead, and marketing), gross profit, net profit, and sales relating to the Asserted Patents and/or any Practicing Product.

75.    The sales, sales forecasts, costs, profits, profit forecasts, and market data, such as described in any business plan, Communications, or Documents, in PANDA's possession or control for any Practicing Product.

76.    All information concerning any analysis, projection, or calculation of profits that PANDA has made or will make for any product it offers.

77.    By year, any R&D expenditure actually made by PANDA to develop any Practicing Products and/or any product for which PANDA claims lost profits.

78.    The entity that markets and sells any product for which PANDA claims lost profits.

79.    Any licensing by PANDA, or those acting on its behalf, of any patent relating to or in the same field of technology as the Asserted Patents.

80.    Any licensing by PANDA, or those acting on its behalf, of the Asserted Patents.

81.    All facts and circumstances concerning the market, demand, and any competition (with Defendants or any third party) for any Practicing Product or any product for which PANDA contends it is entitled to lost profits, including all market studies, analyses, and reports commissioned or obtained by PANDA concerning the Accused Products or any other product that competes with the Accused Products, and any instances where PANDA claimed that Defendants are a competitor prior to the initiation of This Case.

82.    Competitors and competitive intelligence or analyses in PANDA's possession, custody, or control for PANDA's products, the Accused Products, or any Practicing Products.

17

83.     Knowledge by PANDA of any instances in which Defendants had access to or purchased a PANDA product, and all facts and circumstances regarding any such access or purchase.

84.     All facts and circumstances relating to whether any of PANDA's products, past or present, compete with any Accused Product for the same accounts, customers, sales, or revenue.

85.     All facts and circumstances relating to any effort by PANDA to market, license, sell, or otherwise monetize any of its products from accounts or customers from which Defendants or any of their subsidiaries receive revenue.

86.     PANDA's competitors in the market for Practicing Products or any product or service related to the Asserted Patents.

87.     The products that compete with any Practicing Product, including the identity, provider, pricing, supply, demand, and geographic distribution of any such products.

88.     All facts and circumstances regarding the portion of the profit that could be credited to the claimed subject matter covered by the Asserted Patents or Related Applications, as distinguished from non-patented elements, the manufacturing process, business risks, improvements, brand, marketing, or goodwill.

89.     All facts and circumstances regarding the appropriate amount of monetary relief, including the amount of damages requested and calculation of those damages, including but not limited to actual damages, lost profits, or reasonable royalties pursuant to 35 U.S.C. § 284 for any alleged infringement of the Asserted Patents.

90.     Any valuations, estimates, forecasts, return-on-investment analyses, or other assessments of the value of PANDA's intellectual property, conducted by PANDA or by a third-

party and in the possession and control of PANDA, including but not limited to the value of PANDA's patent portfolio, and specifically the value of any of the Asserted Patents.

91.    Any loss of goodwill or market share that PANDA alleges it has suffered as a result of Defendants' actions.

92.    The full factual basis for any contention that PANDA is entitled to injunctive relief, including (a) that PANDA has suffered or will continue to suffer irreparable harm as a result of Defendants' conduct; (b) that remedies available at law, such as monetary damages, are inadequate to compensate for any such irreparable harm; (c) that a remedy in equity is warranted considering the balance of the hardships between PANDA and Defendants; and (d) that the public interest would not be disserved by an injunction.

93.    The full factual basis for PANDA's assertion that Defendants' alleged infringement resulted in lost sales of PANDA's products, including but not limited to the Identity of any such PANDA product; the person, companies, and or accounts that would have purchased PANDA's competing products; and any Communications PANDA has had with the persons, companies, and/or accounts that would have purchased PANDA's products.

94.    PANDA's knowledge of the demand for any Practicing Product.

95.    PANDA's capacity to manufacture, sell, and market any PANDA product it contends it would have sold but for the alleged infringement.

96.    PANDA's knowledge as to the amount of profit it would have made but for Defendants' alleged infringement.

97.    The percentage of recovery for each Person listed on PANDA's initial disclosures in the event damages are awarded.

98.    The percentage of recovery for any Person who is not listed on PANDA's initial disclosures in the event damages are awarded.

99.    PANDA's Communications with the named inventors of the Asserted Patents or any Third Party concerning any Asserted Patent, This Case, the Sportradar Case, the Accused Products, Sportradar, or Defendants and/or their subsidiaries.

100.    The full factual basis for the statements and contentions made in PANDA's motion to compel filed in the Sportradar Case (Dkt. 54), including that:

(a)    Sportradar is a direct competitor of PANDA;

(b)    Defendants and/or their subsidiaries are a direct competitor of PANDA;

(c)    PANDA provides "foundational technology that enables products and services such as Watch & Bet sports (e.g., live odds and wagering while watching an event) among other services";

(d)    Defendants' alleged "use of PANDA's patented technology" has resulted in "PANDA losing sales and profits and suffering irreparable harm, including lost market share and goodwill";

(e)    "Genius leveraged technology incorporating PANDA's patents to secure licensing agreements with various entities, including the English Premier League, Professional League, and Scottish League";

(f)    Sportradar's settlement agreement with Defendants and/or their subsidiaries is "directly relevant to the issue of apportionment for calculation of damages"; and

(g)    The amounts that the Sportradar Defendants and the Genius Sports Defendants pay to obtain betting data and live stream these events is relevant to an apportionment analysis.

20

101.    PANDA's relationships and agreements with its partners, including but not limited to the ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

102.    PANDA's investors, litigation funders, or other Third Parties with a financial interest in PANDA, the Asserted Patents, or This Action.

103.    PANDA's relationship and agreements with ███████████ or other third-party litigation funds, including but not limited to the nature of their interest in PANDA or in This Action, whether third-party approval is necessary for litigation decisions, including settlement decisions, in this Action, and the terms and conditions relating to any such approval.

104.    PANDA's composition, ownership, funding, corporate history, corporate formation, corporate structure, subsidiaries, parents, related and affiliated entities, past and present shareholders, directors, and officers from PANDA's inception to the present.

105.    The reasons, motivations, or purpose for PANDA's investors to invest in PANDA.

106.    The pricing of PANDA's stock, stock options, membership interests, funding rounds, or other ownership rights in PANDA and associated entities.

107.    Whether PANDA is publicly traded or has ever been publicly traded.

108.    PANDA's products and services, whether currently or previously offered or under development.

109.    PANDA's past and present procedures and policies for generating, maintaining, retaining, and disposing of Documents and Things maintained in any form.

110.    All locations where PANDA stores information, Documents, or Communications, including information, Documents, and Communications regarding the Asserted Patents, This Case, the Accused Products, or Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2025, the foregoing document was served to all counsel of record via electronic mail.

<u>*/s/ Jeanne M. Heffernan*</u>
Jeanne M. Heffernan